IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA M. HILL, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 13-1604 |
| | ) | Judge Fischer |
| JAMES BARNACLE, et al. | ) | Magistrate Judge Mitchell |
|     Defendants. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss filed by the Defendants (ECF No. 34) be granted.

II.    Report

Plaintiff, Donna M. Hill, has submitted a pro se civil rights action pursuant to 42 U.S.C. § 1983, which she has been granted leave to proceed in forma pauperis (IFP). In the complaint, she alleges that the defendants, James Barnacle, the Director of the Pennsylvania Department of Corrections (DOC) Office of Special Investigations and Intelligence, along with five state correctional officers assigned to the State Correctional Institution at Houtzdale (SCI Houtzdale) (Superintendent Steven Glunt, David Close, Kenneth Hollibaugh, Captain Brumbaugh and Heather Moore), suspended her privileges to visit and send mail to her incarcerated husband, Dwayne Hill, and that in so doing they engaged in retaliation "in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and her marital communications privilege." (Compl. at 1.)[1] She "also alleges the torts of neglect and mental anguish." Id.

Presently submitted for disposition is a motion to dismiss for failure to state a claim upon

---

[1] ECF No. 2.

which relief could be granted, filed by the Defendants. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion should be granted.

Facts

According to the Complaint, Plaintiff is a United States citizen and a resident of the Commonwealth of Pennsylvania. Her husband, Dwayne Hill, is an inmate currently incarcerated at SCI Houtzdale and she also indicates that her daughter is serving a life sentence in prison as well. (Compl. ¶ 3.) She alleges that she received reports from her husband that he had been sexually fondled by an officer and his complaints about this abuse were rejected; that she received correspondence from him that the mental health unit stopped giving him medication and stopped seeing him for counseling sessions; that they removed him from Z-code (single cell) status after he had been living in a single cell for approximately 20 years; that when they put him in a double cell he could not handle it and was accused of setting a mattress on fire, which resulted in him being sent to the Restricted Housing Unit (RHU); that in response, she conducted a letter campaign, writing to various news media outlets, state law makers and prison officials out of concern for her husband's health and safety;[2] that she received a report that he had been assaulted by staff on April 5, 2012 and later that month she received reports that he was being denied mental health treatment; that most of his personal property had been confiscated or stolen by staff; that he was held in a stripped cell for almost a month and denied all hygiene practices, that staff had been spitting in his food and had placed disinfectant in his food and denied him medical treatment based on attempts at acute poisoning, but when he filed a grievance, they twisted his words around and denied it; that she traveled to SCI Houtzdale on April 12, 2012 to

---

[2] Attached to the Complaint is a letter, dated November 5, 2011, in which Plaintiff complained to John E. Wetzel, Secretary of the DOC, about the treatment her husband had been receiving. (Compl. Ex. 2.)

visit him only to be informed that her visiting privileges were suspended and was told to leave without explanation; that a week later she received correspondence from Superintendent Glunt stating that her privileges were revoked pending an investigation by Captain Brumbaugh; that she learned through other correspondence that her mail privileges had been suspended as well; that on June 19, 2012, she filed a "writ of mandamus" in the Commonwealth Court seeking an order directing Defendants to explain her suspension and return or deliver her mail; that four days later she received correspondence from Superintendent Glunt stating that her visiting privileges had been suspended indefinitely; that Defendants gave no reason for their actions; that on July 17, 2012, she wrote to Superintendent Glunt asking him a reason for her suspension; that on July 30, 2012, Superintendent Glunt responded that her actions and support of her husband's behavior posed a threat to the safety and security of the facility, but they did lift the visiting ban regarding visits with her daughter, stating that she had a continued positive adjustment. (Compl. ¶¶ 10-21 & Exs. 2-12.)

Prior Cases

On June 20, 2012, Plaintiff filed a petition for review in the Pennsylvania Commonwealth Court, docketed at No. 419 MD 2012. Named as defendants were the Commonwealth of Pennsylvania and the DOC. The petition alleged that the defendants had suspended her visitation and mailing privileges in violation of the First, Fourth, Eighth and Fourteenth Amendments to the Constitution and her marital communication rights/privileges. (ECF No. 34 Ex. A at 1.) The defendants filed preliminary objections and in response Plaintiff filed an amended petition for review on August 6, 2012. On April 9, 2013, the Commonwealth Court filed a Memorandum Opinion sustaining the preliminary objections and dismissing the amended petition for review. Plaintiff filed an appeal in the Pennsylvania Supreme Court,

docketed at No. 35 MAP 2013. On November 20, 2013, the Pennsylvania Supreme Court entered an order affirming the judgment of the Commonwealth Court.

On August 10, 2012, Plaintiff submitted an application to proceed IFP in this Court in a case which was docketed at Civ. A. No. 12-1145, Hill v. Barnacle. The motion to proceed IFP was granted on August 13, 2012 and the complaint was filed that same day (ECF No. 3). The complaint alleged that the defendants (the same defendants named in the pending case) violated her First Amendment right to intimate association by suspending her visitation privileges in retaliation for her investigation and complaints about her husband's treatment; that they violated her right to be free from cruel and unusual punishment; and that they violated her property interest in her mail. On November 6, 2012, the defendants filed a motion to dismiss (ECF No. 13), in which they argued that the Court should abstain from exercising jurisdiction pursuant to Younger v. Harris, 401 U.S. 37 (1971), because at that time, Plaintiff had pending a petition for review in the Commonwealth Court, as described above. Plaintiff filed her brief in opposition on December 4, 2012 (ECF No. 19). On January 3, 2013, a Memorandum and Order was entered (ECF No. 20), granting the motion to dismiss on the ground of Younger abstention. Plaintiff filed a notice of appeal (ECF No. 21), but on May 17, 2013, the Court of Appeals affirmed the judgment of this Court (ECF No. 24).

Meanwhile, on November 20, 2012, Plaintiff initiated a second case, Hill v. Pennsylvania Department of Corrections, docketed at No. 12-1697, which purported to raise civil rights claims on behalf of Dwayne Hill under 42 U.S.C. § 1983 against Superintendent Glunt, plus the DOC, DOC Secretary John Wetzel, psychiatrist Dr. Khatri and psychologists Walmer and Errigo, for alleged violations of his Eighth and Fourteenth Amendment rights, as well as state law claims of negligence and mental anguish. On November 28, 2012, a Report and Recommendation (R&R)

4

was filed (ECF No. 3), recommending that the complaint be dismissed for lack of standing. The R&R concluded that Plaintiff had no right to bring claims on behalf of her husband as she had not been appointed his legal representative and, in any event, claims on behalf of another individual must be presented by counsel. Plaintiff filed objections (ECF Nos. 4, 5), but on December 18, 2012, the Court entered an order adopting the R&R and dismissing the case (ECF No. 6). Again, Plaintiff filed a notice of appeal (ECF No. 7), but on April 25, 2013, the Court of Appeals affirmed the judgment of this Court (ECF No. 10).

Procedural History

Plaintiff filed a motion to proceed in forma pauperis on November 7, 2013. The motion was granted on November 8, 2013 and the complaint was filed that same day (ECF No. 3). She invokes § 1983 and alleges "retaliatory suspension of her visiting and mail privileges and the confiscation of her correspondence in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and her marital communications privilege." (Compl. at 1.) She "also alleges the torts of neglect and mental anguish." Id. She sues the Defendants in their individual capacities and requests an injunction restraining them from enforcing the suspension and restoring her visitation privileges, "compensatory damages in an unspecified amount," "punitive damages in an unspecified amount," and "such other relief as it may appear the plaintiff is entitled." (Compl. at 7.) Attached to the Complaint are a number of documents which, Plaintiff contends, support her retaliation claims.

On February 19, 2014, an Amended Report and Recommendation was filed (ECF No. 11),[3] recommending that the Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[3] On December 23, 2013, a Report and Recommendation was filed (ECF No. 5), recommending that the complaint be dismissed and on January 14, 2014, an order was entered (ECF No. 6) adopting the R&R as the opinion of the Court. However, on that same date, Plaintiff filed

On March 18, 2014, Plaintiff filed objections (ECF No. 15), and on March 19, 2014, the Court entered an order adopting the Report and Recommendation and dismissing the Complaint (ECF No. 16). The Court held that Plaintiff's Complaint was barred by the doctrine of res judicata and that, as the Commonwealth Court had observed, she could not state a claim for retaliation when her alleged protected conduct did not occur until after her privileges were revoked.

Plaintiff filed a Notice of Appeal (ECF No. 17) on April 7, 2014. On January 23, 2015, the Court of Appeals entered a judgment (ECF No. 19) vacating the judgment of this Court and remanding the action for further proceedings. The Court of Appeals held that: 1) the doctrine of res judicata did not apply because it requires identify of parties but Plaintiff named different parties in different capacities in her state and federal lawsuits; and 2) this Court erred in relying upon the Commonwealth Court's conclusion because in fact she alleged that she began a letter writing campaign in 2011 and that her privileges were suspended in 2012.

After the mandate issued, service of process was made upon the Defendants. On May 19, 2015, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 34). On June 15, 2015, Plaintiff filed a brief in opposition (ECF No. 39).

<u>Standard of Review</u>

The Supreme Court has issued two decisions that pertain to the standard of review for failure to state a claim upon which relief could be granted. The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement

---

objections (ECF No. 7) and Judge Fischer vacated the order (ECF No. 8). Thereafter, the original R&R was vacated and an Amended Report and Recommendation was filed which superseded it.

6

that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 679. The Court of Appeals has summarized the inquiry as follows:

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

The Court of Appeals has explained that: "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). Thus, the documents that Plaintiff has attached to her Complaint and the decision of the Commonwealth Court, which is a public record, may be considered in determining whether Plaintiff has stated a claim upon which relief may be granted. In addition, Defendants have attached to their motion to dismiss Plaintiff's Amended Petition for Review in the Pennsylvania Commonwealth Court to

7

demonstrate that she is raising the same issues here and that pleading may be considered as a public record.

Defendants contend that: 1) Plaintiff's claims are barred by the doctrine of collateral estoppel because they were previously actually litigated in a determination that was necessary to the decision and Plaintiff was fully represented in the prior proceeding in the Pennsylvania Commonwealth Court; 2) the retaliation claim fails for lack of a causal connection in that five months elapsed between Plaintiff's protected activity and the suspension of her visitation privileges and Defendants have pointed to admissible evidence that they would have reached the same decision regardless of her alleged protected activity; 3) they have sovereign immunity with respect to any state law claims; and 4) Plaintiff has made no allegations of specific involvement of any of the defendants other than Superintendent Glunt—the other defendants are alleged at most to have participated in the investigation but not the decision to suspend her visitation privileges, and thus they must be dismissed.

Plaintiff responds that: 1) collateral estoppel does not apply because Defendants were not parties to the proceeding in the Commonwealth Court and the court did not address her retaliation claim based on her pre-suspension letter writing campaign or her claim that they made the suspension indefinite in retaliation for her act of filing the Commonwealth Court case; 2) Defendants claim that she must attach a complete copy of her letter campaign in order to satisfy her retaliation claim but cite no authority for this redundancy and state no reason for the records,[4] and they concede that Superintendent Glunt's letter provided no reasons for making her suspension indefinite yet claim that the reason for their actions was perfectly clear; 3) sovereign immunity only applies to actions taken by state officials within the scope of their employment,

---

[4] This argument does not actually appear in Defendants' brief.

but she is alleging that they abused their office; and 4) the named Defendants are supervisors who could respond to discovery to identify those individuals who are actually responsible for the actions she contends occurred, and the letter dated April 12, 2012 appears to be signed by Defendant Close on behalf of Superintendent Glunt.

    Collateral Estoppel

    The Court of Appeals has observed that:

> Under Pennsylvania law, the following conditions must be satisfied for collateral estoppel to bar a subsequent claim: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) "[t]he party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action"; and (4) "[t]he party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action."

Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 310 (3d Cir. 2009) (quoting Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998)). The court noted that "Pennsylvania courts will occasionally frame the test as a five-factor test, adding the requirement that the determination in the prior proceeding was essential to the judgment." Id. n.12 (citation omitted). Collateral estoppel may be asserted against a pro se plaintiff. See, e.g., Kremer v. Chemical Const. Corp., 456 U.S. 461, 483 n.24 (1982) (noting that "what a full and fair opportunity to litigate entails is the procedural requirements of due process" i.e., notice and an opportunity to be heard); Hofmann v. Pressman Toy Corp., 193 F. App'x. 121, 123 (3d Cir. 2006) (applying collateral estoppel and/or res judicata doctrines to pro se plaintiff); Savage v. Stickman, 2007 WL 550268, at *3 (W.D. Pa. Feb. 16, 2007) (same).

    Defendants argue that all of the factors apply here: 1) the issue (whether Plaintiff suffered retaliatory suspension of her visiting and mail privileges and the confiscation of her correspondence in violation of the First, Fourth, Eighth and Fourteenth Amendments) is

9

identical; 2) there was a final judgment on the merits when the respondents filed preliminary objections in the nature of a demurrer which were sustained, resulting in the dismissal of the amended petition for review; 3) Plaintiff was a party to the Commonwealth Court action; 4) she had a full and fair opportunity to litigate this issue; and 5) the previous determination was essential to the judgment.[5]

Plaintiff argues that the defendants in the Commonwealth Court action are not the same, or are not sued in the same capacity, as the Defendants herein. However, unlike the requirements of res judicata, there is no requirement that the party seeking to apply collateral estoppel be identical to the party in the prior proceeding, only that the party to whom the doctrine applies (namely, Plaintiff) be the same. Burlington Northern R.R.. Co. v. Hyundai Merchant Marine Co., Ltd., 63 F.3d 1227, 1232 (3d Cir. 1995).

Nevertheless, Defendants have not demonstrated that all of the elements of collateral estoppel are satisfied in this case. The Commonwealth Court did not reach the issue of retaliation based upon Plaintiff's pre-suspension letter-writing campaign and thus the identical issue was not actually litigated. Moreover, the Court of Appeals has held that the Commonwealth Court erred in concluding that Plaintiff could not state a retaliation claim because her protected activity occurred only after her visitation privileges had been suspended.[6] Nor did the Commonwealth Court address Plaintiff's claim that the defendants retaliated against

---

[5] The Court of Appeals noted that this Court did not address whether Plaintiff's complaint was barred by collateral estoppel and left the issue for this Court to determine upon remand. Upon review of the issue, however, the doctrine does not apply for the reasons stated in the text.
[6] Interestingly, however, it is noted that Plaintiff has indicated that this case:
> contains facts and evidence that was not introduced in the state court. Specifically, plaintiff's letter campaign, where she wrote complaining about inadequate mental health care at the prison where her husband was incarcerated. The letters were sent on November 5, 2011, before her visiting ban and were the basis for the defendants' retaliation.

(ECF No. 15 at 6.)

her by making the suspension of her privileges indefinite six days after she filed her petition for review. Again, because the Commonwealth Court did not reach this issue, it cannot serve as a basis for collateral estoppel. Therefore, Defendants' request to dismiss this action based upon the application of collateral estoppel should be denied.

<u>Retaliation Claims</u>

The Court of Appeals has held that:

> Retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. <u>See, e.g.</u>, <u>Mitchell v. Horn</u>, 318 F.3d 523, 529-31 (3d Cir. 2003); <u>Rauser v. Horn</u>, 241 F.3d 330, 333-34 (3d Cir. 2001); <u>Allah v. Seiverling</u>, 229 F.3d 220, 224-26 (3d Cir. 2000). To state a claim for retaliation, a plaintiff must allege that: (1) he was engaged in constitutionally protected conduct, (2) "he suffered some 'adverse action' at the hands of the prison officials"; and (3) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision" to take that action. <u>Rauser</u>, 241 F.3d at 333.

<u>Bistrian v. Levi</u>, 696 F.3d 352, 376 (3d Cir. 2012) (footnote omitted). However, "the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." <u>Rauser</u>, 241 F.3d at 334.

Defendants concede that Plaintiff's act of writing a letter on November 5, 2011 to complain about the treatment her husband was receiving was a protected activity for purposes of a retaliation claim. (ECF No. 35 at 11.) <u>See</u> <u>Mitchell</u>, 318 F.3d at 530; <u>Allah</u>, 229 F.3d at 224. Moreover, filing a complaint in court would also constitute constitutionally protected activity. <u>Allah</u>, 229 F.3d at 224-25.

They also do not contest that the suspension of her visitation privileges could constitute an "adverse action." "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." <u>Allah</u>, 229 F.3d at 224-25 (citation

11

omitted). See Cooper v. Hoover, 2006 WL 3544711, at *2 (M.D. Pa. Dec. 8, 2006) (inmate who alleged he was denied visits from his daughter in retaliation for challenging his sentence and filing grievances stated a claim under the First Amendment). Although Plaintiff is not a prisoner, the Supreme Court has observed that its case law in this area "involved regulations that affected rights of prisoners and outsiders." Thornburgh v. Abbott, 490 U.S. 401, 410 n.9 (1989).

However, Defendants contend that Plaintiff has failed to point to a causal connection between her alleged protected activity (the letter she sent on November 5, 2011) and the suspension of her visitation privileges, which occurred on April 12, 2012. They note that five months is too long a period of time to constitute "unduly suggestive temporal proximity."

The Court of Appeals has held that:

> a suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation. See Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001). However, "[e]ven if timing alone could ever be sufficient to establish a causal link, ... the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (internal quotations omitted; alterations in original); see also Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir.1989) (two days between protected activity and alleged retaliation sufficient to draw inference of causal connection).

Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003). See LeBoon v. Lancaster Jewish Community Ctr. Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) (three months elapsing between protected activity and adverse action is too remote). Plaintiff has not responded to this argument.

Plaintiff argues that, with respect to her second claim, the timing is unduly suggestive because she filed her petition for review in the Commonwealth Court on June 20, 2012 and she was notified on June 26, 2012 that the suspension of her visitation privileges had been made indefinite. However, this argument would only be viable if the only information available was the dates of these two events. As noted above, Plaintiff has submitted the correspondence she

12

engaged in with Superintendent Glunt, which provides no support for a causal connection.

First, on April 12, 2012, Superintendent Glunt informed her that "[e]ffective immediately, you visiting privileges at SCI Houtzdale are suspended indefinitely due to a pending investigation." (Compl. Ex. 8.) Then, on June 26, 2012, Superintendent Glunt indicated that:

> As [a] follow-up to our April 12, 2012 correspondence, please be advised that an investigation packet was submitted to the DOC Office of Special Investigations and Intelligence (OSII) for their review.
>
> Upon the OSII and my review of the investigation information, the decision has been made to suspend your visiting privileges indefinitely, effective immediately.

(Compl. Ex. 10). When Plaintiff wrote a letter to Superintendent Glunt on July 17, 2012 (Compl. Ex. 11), inquiring as to the reason for these sanctions, he responded in a letter dated July 30, 2012, stating as follows:

> As previously indicated, your actions and support of your husband's behavior poses a threat to the safety and security of this facility. Serious staff injury resulted. In accordance with DC-ADM 812, Section 1.B.8, your visiting privileges have been suspended indefinitely. You may view this policy on our public website at www.cor.state.pa.us.
>
> You have been suspended indefinitely on prior occasions and have been reinstated, only to return to behavior that poses a threat to the safety and security of the facility that houses your husband. The broad discretion shown by reinstating your visiting privileges has not yielded the expected positive results. As such, the suspension will continue.
>
> You currently have a daughter … incarcerated at SCI-Cambridge Springs. Given [her] life sentence and her continued positive adjustment, you will be permitted to visit [her] as a lone exception to this visitation ban. All other visit restrictions remain in effect.

(Compl. Ex. 12.) Plaintiff contends that, in this letter, Superintendent Glunt "conceded to the fact of retaliating against her, for supporting her husband." (ECF No. 39 at 2.) The letter itself, however, makes clear that the issue considered by the Superintendent was Plaintiff's support for

13

her husband's behavior, which posed a threat to the safety and security of the facility. Although the Court must accept Plaintiff's well-pleaded factual allegations, it is not required to accept Plaintiff's attempt to change the meaning of an unambiguous document she submitted into the record. Further, it is noted that she does not even challenge the contents of the letter.

The Court also takes judicial notice of Plaintiff's prior history of having her visiting privileges suspended and reinstated. In Pfender v. Secretary Pa. Dep't of Corrections, 2011 WL 680203 (M.D. Pa. Feb. 16, 2011), aff'd, 443 F. App'x. 749 (3d Cir. 2011), the court recounted that Plaintiff (then named Donna Pfender) was barred from visiting any state correctional institution from 2008 to January 7, 2011 after Dwayne Hill, who was then her common-law husband, was found to be in possession of a satellite photograph showing a complete aerial view of SCI Huntingdon's layout, which could have been used as an implement of escape. After confirming that the due process clause does not provide an interest in prison visitation and noting that Plaintiff made no showing that Pennsylvania law created a protected liberty interest in visiting privileges, the Court of Appeals held that any right that might exist was necessarily circumscribed by the need to afford deference to prison officials in the exercise of their professional judgment. The court concluded that the suspension imposed on Plaintiff was reasonably related to legitimate penological interests. 443 F. App'x. at 752 (citing Turner v. Safely, 482 U.S. 78, 89 (1987)).

In summary, Plaintiff has a well-documented history of having her visiting privileges suspended and reinstated and in the incidents that led to this case, Superintendent Glunt sent her a series of notices informing her that: 1) her visitation privileges were suspended pending an investigation; 2) upon review of the investigation information, the decision was made to make her suspension indefinite; and 3) her actions and support of her husband's behavior posed "a

threat to the safety and security of this facility." Given all of this background and record information, Plaintiff cannot state a claim that the most recent suspension, which began April 12, 2012, was taken in retaliation for her protected activity of a letter-writing campaign regarding her husband's treatment which she began in November 2011. Nor can she maintain that the Defendants' June 26, 2012 decision to make the suspension of her visitation privileges indefinite upon receiving the results of an investigation (of which she was already aware) into a threat to the safety and security of the facility was actually made in retaliation for her having filed a petition for review in the Pennsylvania Commonwealth Court six days before. See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001) (the fact that an employer transferred the plaintiff, an action it was already contemplating before it learned of her federal lawsuit, was "no evidence whatever of causality.") Moreover, even if Plaintiff could state a claim, the very documents she has submitted as exhibits to her Complaint demonstrate that Defendants would have made the same decision absent her protected conduct for reasons reasonably related to a legitimate penological interest. Therefore, she cannot state a claim for retaliation and in this respect, Defendants' motion to dismiss should be granted.

State Law Claims

Plaintiff purports to raise state law claims of "mental anguish" and "neglect."[7] Defendants contend that, to the extent the Complaint actually raises any state law claims, they are entitled to sovereign immunity with respect to them.

State officials such as state correctional facility officers are immune from suit for the

---

[7] There is no such claim as "mental anguish." See Kearney v. JPC Equestrian, Inc., 2012 WL 1020276, at *7 (M.D. Pa. Jan. 4, 2012). Moreover, repeated "neglect" of a child is a basis for terminating parental rights. 23 Pa. C.S. § 2511(a)(2). The statute has no applicability here. It may be that Plaintiff intends to invoke the state law torts of intentional infliction of emotional distress and negligence. In any event, the Court will assume, without deciding, that Plaintiff has actually alleged a tort law claim recognized under Pennsylvania law.

intentional acts they allegedly commit within their scope of office or employment. 1 Pa. C.S. § 2310; 42 Pa. C.S. §§ 8501, 8521(a), 8522. As summarized by the Pennsylvania Commonwealth Court:

> it is well established that sovereign immunity is the law in Pennsylvania and is grounded in Article 1, § 11 of the Pennsylvania Constitution. E-Z Parks, [Inc. v. Philadelphia Parking Auth., 532 A.2d 1272, 1276 (Pa. Commw. 1987)]. At 1 Pa. C.S. § 2310 the legislature provided that the Commonwealth and its officials acting within the scope of their duties enjoy sovereign and official immunity and are immune from suit except when and where the legislature specifically provides otherwise.
>
> At 42 Pa. C.S. § 8522(b), the legislature specifically waived sovereign immunity in nine areas. In the present case, Faust's action is against the State and its officials acting in their official capacity. Clearly, the defendant-appellees enjoy the immunity provided by 1 Pa. C.S. § 2310. Further, intentional tort claims and civil rights actions are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b). Accordingly, we conclude that Faust's claims against the Department and its officials acting in their official capacity are barred by the doctrine of sovereign immunity.

Faust v. Commonwealth Dep't of Revenue, 592 A.2d 835, 839-40 (Pa. Commw. 1991) (footnotes omitted).

Assuming that "mental anguish" is a cognizable tort under Pennsylvania law, it would constitute an intentional tort and state officials would be protected by the doctrine of sovereign immunity, as cited above. Plaintiff argues that Defendants are only immune to the extent that their actions were taken within the scope of their employment. This argument is unavailing:

> Under Pennsylvania law, an action falls within the scope of employment if it: (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

Mitchell v. Luckenbill, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (quoting Wesley v. Hollis, 2007 WL 1655483, at *14 (E.D. Pa. June 6, 2007). Suspending visitation privileges is the kind of act employees of state correctional institutions are employed to perform when necessary, it

occurred substantially within the job's authorized time and space limits and was motivated at least in part by a desire to serve the employer, that is, by maintaining security at the prison.

With respect to "neglect," the statute lists nine negligent acts for which recovery against a state agency is permitted: 1) vehicle liability; 2) medical-professional liability; 3) care, custody or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) potholes and other dangerous conditions; 6) care, custody or control of animals; 7) liquor store sales; 8) National Guard activities; and 9) toxoids and vaccines. 42 Pa. C.S. § 8522(b). Plaintiff's allegations do not fall within any of these exceptions. Therefore, sovereign immunity applies to shield Defendants from liability.

For these reasons, it is respectfully recommended that the motion to dismiss filed by the Defendants (ECF No. 34) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by September 17, 2015. Any party opposing the objections shall file a response by October 1, 2015. Failure to file timely objections will waive the right of appeal.

        Respectfully submitted,

        s/Robert C. Mitchell
        ROBERT C. MITCHELL
        United States Magistrate Judge

Dated: September 3, 2015

cc:    Donna M. Hill
       348 Country Club Road
       Apt. 2
       Washington, PA 15301-2712