IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DONNA M. HILL,                        )
            Plaintiff,                )
                                      )
        vs.                           )        Civil Action No. 13-1604
                                      )        Judge Fischer
JAMES BARNACLE, et al.                )        Magistrate Judge Mitchell
            Defendants.               )

REPORT AND RECOMMENDATION

I.      Recommendation

        It is respectfully recommended that the motion for summary judgment filed by the

Defendants (ECF No. 68) be granted.

II.     Report

        Plaintiff, Donna M. Hill, brings this pro se civil rights action pursuant to 42 U.S.C.

§ 1983, which she has been granted leave to proceed in forma pauperis (IFP).  She names as

Defendants James Barnacle, the Director of the Pennsylvania Department of Corrections Office

of Special Investigations and Intelligence, along with five state correctional officers assigned to

the State Correctional Institution at Houtzdale (SCI Houtzdale): Superintendent Steven Glunt,

David Close, Kenneth Hollibaugh, Captain Brumbaugh and Heather Moore.  She alleges that

these individuals suspended her privileges to visit and send mail to her incarcerated husband,

Dwayne Hill, and that in so doing they engaged in retaliation "in violation of the First, Fourth,

Eighth and Fourteenth Amendments to the United States Constitution and her marital

communications privilege."  (Compl. at 1.)[1]  She also alleged "the torts of neglect and mental

anguish."  Id.  However, those state law claims were dismissed on October 28, 2015 and the

Court of Appeals affirmed the judgment of the Court in this respect.  Therefore, they are no

_____
[1] ECF No. 2.

longer part of the case.

Presently submitted for disposition is a motion for summary judgment, filed by the Defendants. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion should be granted.

<u>Facts</u>

Plaintiff is a pro se litigant who is married to a prisoner, Dwayne Hill (BQ-5093) ("Inmate Hill"), who is currently in the custody of the Pennsylvania Department of Corrections ("DOC"). (Compl. ¶¶ 3, 10; Defs.' App. (ECF No. 71) Ex. 1 (Inmate Query—Cell History)). Inmate Hill was confined at SCI Houtzdale from July 28, 2009, until his transfer on November 13, 2012 to SCI Fayette. On June 30, 2015, he was transferred to SCI Rockview, where he is currently incarcerated. (ECF No. 71 Ex. 1 at 3-4; Glunt Decl. ¶ 5.[2])

Plaintiff's claims are based upon events alleged to have occurred while Inmate Hill was confined at SCI Houtzdale. (Compl. ¶¶ 13-21.) At the relevant time, Steven Glunt ("Glunt") was the Superintendent at SCI Houtzdale. (Glunt Decl. ¶ 2.) At the times relevant to this action, members of the senior staff at SCI Houtzdale included Kenneth Hollibaugh ("Hollibaugh"), Deputy Superintendent for Centralized Services; David Close ("Close"), Deputy Superintendent for Facilities Management; and Intelligence Captain Byron Brumbaugh ("Brumbaugh"). (Glunt Decl. ¶ 3; Hollibaugh Decl. ¶ 1;[3] Close Decl. ¶ 2;[4] Brumbaugh Decl. ¶ 2.[5]) Heather Moore was assigned to the Mail Room at SCI Houtzdale. (Compl. ¶ 9.)

Plaintiff alleges that she received reports that her husband had been sexually fondled by an officer at SCI Houtzdale, that he was told his complaint was unfounded, that staff began to

[2] ECF No. 71 Ex. 8.
[3] ECF No. 71 Ex. 11.
[4] ECF No. 71 Ex. 9.
[5] ECF No. 71 Ex. 10.

use threats and violence against him and deny him grievance forms, that the mental health unit stopped giving him medication and stopped seeing him for counseling sessions, that they removed his "Z-Code" which allowed him to housed in a single cell as he had been for almost the entire 20 years he had been incarcerated and that they tried to put him in a double cell with another prisoner and contended that he set a mattress on fire, which resulted in him being sent to the Restricted Housing Unit (RHU).  In response, Plaintiff states that she conducted a letter campaign, writing to various news media outlets, state law makers and prison officials out of concern for her husband's health and safety.  (Compl. ¶¶ 10-12.)  Attached to the Complaint is a letter, dated November 5, 2011, in which Plaintiff reported her concerns about her husband's treatment to John E. Wetzel, Secretary of the DOC.  (Compl. Ex. 2.)

Plaintiff alleges that, on April 10, 2012, she received reports that her husband had been assaulted by staff on April 5, 2012 at SCI Houtzdale.  (Compl. ¶ 13 & Exs. 3-a, 3-b, 4.)  She states that, on April 12, 2012, she traveled to SCI Houtzdale in order to investigate the matter and was informed upon arrival that her visiting privileges had been suspended and was told to leave without explanation.  (Compl. ¶¶ 14-15.)  Almost a week later, she received correspondence from Glunt stating that her visiting privileges were suspended pending an investigation by Captain Brumbaugh.  (Compl. ¶ 16 & Ex. 8.)  She also alleges that she "learned that her mail privileges had been suspended as well."  (Compl. ¶ 17.)

Defendants indicate that, on April 5, 2012, there was an incident between Inmate Hill and a corrections officer that occurred at SCI Houtzdale.  (Glunt Decl. ¶ 6; Close Decl. ¶ 5; Brumbaugh Decl. ¶¶ 6-7; ECF No. 71 Ex. 6 ("Brumbaugh Report").  During this incident, Inmate Hill assaulted the corrections officer, without provocation, by punching him in the head and face. Id.

As the Security Captain, Brumbaugh was assigned to investigate this incident. (Brumbaugh Decl. ¶ 6.) Brumbaugh subsequently prepared a report which was submitted to Close on April 11, 2012. (Brumbaugh Decl. ¶ 6; Close Decl. ¶ 6; Brumbaugh Report.) Brumbaugh's investigation revealed that on April 5, 2012, Inmate Hill committed an unprovoked physical assault on Corrections Officer Rightnour. (Brumbaugh Decl. ¶ 7; Glunt Decl. ¶ 6; Close Decl. ¶ 5.) More specifically, while CO Rightnour was making a guard tour of the housing unit, he encountered Inmate Hill. Inmate Hill then:

> informed [Rightnour] that he wasn't gong (sic) to do the "double cell" thing. Rightnour responded by telling Hill that if he refused to enter the cell upon termination of block out, he would have to issue Hill a DC141 [misconduct report]. Hill replied by saying "Well, I'm not going in when block out is over." When Rightnour turned and walked away from Hill, Hill began punching Rightnour in his face and head with a closed fist. At this point, Rightnour tucked his head and attempted to "cover up" but Hill continued to strike him. As staff arrived, Hill stopped and stood in his doorway, saying "Fuck it, come get some." As additional staff began to arrive, Hill entered his cell and the door was secured. Staff observed Hill inside of his cell pick up a Bic pen from the desk and state, "Come on mother fuckers. I wanna kill one of you." Eventually Hill agreed to be cuffed through the cell wicket and was escorted to the Restricted Housing Unit without further incident.

(Brumbaugh Report at 1.)

Based on Brumbaugh's investigation, as detailed below, he concluded that Plaintiff had prior knowledge of Inmate Hill's intent to assault a corrections officer at SCI Houtzdale and had, in fact, encouraged him to commit this assault. (Brumbaugh Decl. ¶ 8; Glunt Decl. ¶ 7; Close Decl. ¶ 6; Brumbaugh Report at 2.) Brumbaugh also learned that Plaintiff had been communicating with Inmate Hill through the use of several aliases, which was a violation of DOC rules. (Brumbaugh Decl. ¶ 9; Brumbaugh Report at 2; Glunt Decl. ¶ 7; Close Decl. ¶ 6.)

Based on the information received during this investigation and Plaintiff's history of having her visiting privileges suspended and reinstated, Brumbaugh recommended on behalf of

the Security Office that Plaintiff "be permanently suspended from visiting inmate Dwayne Hill, BQ5093. This suspension would ensure the integrity, security, and stability of the institution and the department of corrections." (Brumbaugh Decl. ¶ 10; Brumbaugh Report at 3.) Brumbaugh submitted his report to Close, the Deputy Superintendent for Facilities Management. (Brumbaugh Decl. ¶ 11.)

Based on the information received from Captain Brumbaugh's investigation and report, a decision was made to suspend Plaintiff's visiting privileges at SCI Houtzdale indefinitely pending further investigation. (Close Decl. ¶ 7.) This decision was made by Close, because Glunt was out of the institution at this time. (Close Decl. ¶ 7; Glunt Decl. ¶ 8.)

Plaintiff was notified of this decision by letter dated April 12, 2012; this letter was signed by Close. (ECF No. 71 Ex. 2; Close Decl. ¶ 7; Glunt Decl. ¶ 8.) This matter was then referred to the DOC's Office of Special Investigations and Intelligence (OSII) for further investigation. (Glunt Decl. ¶ 9; Close Decl. ¶ 8.) Additional investigation was conducted and thereafter the decision was made to suspend Plaintiff's visiting privileges with her spouse indefinitely. (Glunt Decl. ¶ 9; Close Decl. ¶ 8.) Glunt states that he made this decision.

Plaintiff was notified of this decision by letter dated June 26, 2012, signed by Glunt.[6] Glunt indicated that:

> As [a] follow-up to our April 12, 2012 correspondence, please be advised that an investigation packet was submitted to the DOC Office of Special Investigations and Intelligence (OSII) for their review.
>
> Upon the OSII and my review of the investigation information, the decision has been made to suspend your visiting privileges indefinitely, effective immediately.

(ECF No. 71 Ex. 3; Glunt Decl. ¶ 9; Close Decl. ¶ 8.) Plaintiff wrote a letter to Glunt on July 17,

---

[6] As explained below, six days prior to the date this letter was signed, Plaintiff filed an action in the Pennsylvania Commonwealth Court.

2012 (ECF No. 71 Ex. 4; Glunt Decl. ¶ 15), inquiring as to the reason for these sanctions. Glunt responded in a letter dated July 30, 2012, stating as follows:

> As previously indicated, your actions and support of your husband's behavior poses a threat to the safety and security of this facility. Serious staff injury resulted. In accordance with DC-ADM 812, Section 1.B.8, your visiting privileges have been suspended indefinitely. You may view this policy on our public website at www.cor.state.pa.us.
>
> You have been suspended indefinitely on prior occasions and have been reinstated, only to return to behavior that poses a threat to the safety and security of the facility that houses your husband. The broad discretion shown by reinstating your visiting privileges has not yielded the expected positive results. As such, the suspension will continue.
>
> You currently have a daughter … incarcerated at SCI-Cambridge Springs. Given [her] life sentence and her continued positive adjustment, you will be permitted to visit [her] as a lone exception to this visitation ban. All other visit restrictions remain in effect.

(ECF No. 71 Ex. 5; Glunt Decl. ¶¶ 15-17.)[7]

Defendants state that both the initial decision to suspend Plaintiff's visiting privileges pending further investigation and the final decision to suspend Plaintiff's visiting privileges following the OSII investigation were based on the information learned through the previously identified investigations and reports. They deny any knowledge of Plaintiff's alleged protected activity and state that, even if they had been aware of it, this would not have contributed in any way to the decisions made. (Brumbaugh Decl. ¶¶ 17, 20; Close Decl. ¶¶ 10-13; Glunt Decl. ¶¶ 10-17.)

Close and Glunt state that they believed that Plaintiff not only had prior knowledge of her

---

[7] Defendants acknowledge that Glunt's letters did not provide much detail, but they assert that the DOC did not provide more detail regarding the investigation because doing so "could further compromise both institutional safety and security, as well as its intelligence gathering efforts by putting Plaintiff on notice of what exactly the DOC has learned through its security investigations and intelligence gathering efforts." (ECF No. 69 at 10 n.2 (citing Mearin v. Folino, 2012 WL 4378184, at *5 (W.D. Pa. Sept. 24, 2012); Haddix v. Burris, 2014 WL 6983287, at *4-5 (N.D. Cal. Dec. 9, 2014)).

husband's intent to assault a corrections officer at SCI Houtzdale in order to avoid being double celled, but also that she actively encouraged and endorsed her husband's actions. (Close Decl. ¶ 10; Glunt Decl. ¶ 10; Brumbaugh Report at 2-3.) The investigation also showed that Plaintiff had been involved in several previous incidents which had violated prison rules and/or otherwise compromised the security at SCI Houtzdale. (Brumbaugh Decl. ¶ 18; Glunt Decl. ¶ 11; Close Decl. ¶ 11; Brumbaugh Report, at 2-3.) These incidents involved using aliases to communicate with her husband, the commission of sexual acts while visiting her husband, and on one occasion, supplying him with maps and other implements of escape. (Glunt Decl. ¶ 11; Close Decl. ¶ 11; Brumbaugh Report at 2-3.)

In consideration of this and all other information contained in the investigation, both Close and Glunt believed that it was in the best interests of the institution, as a matter of safety and security, that Plaintiff's visiting privileges be indefinitely suspended. (Glunt Decl. ¶ 12; Close Decl. ¶ 12.) Brumbaugh, Close and Glunt state that, prior to making these decisions regarding Plaintiff's visiting privileges, they were not aware of or recalled seeing Plaintiff's correspondence to Secretary of Corrections John E. Wetzel dated November 5, 2011, nor were they aware of any other specific correspondence or legal filings where Plaintiff raised complaints or concerns with her husband's confinement at SCI Houtzdale. (Brumbaugh Decl. ¶ 20; Close Decl. ¶ 13; Glunt Decl. ¶¶ 13-14.) They state that these materials had no impact on their decisions to suspend Plaintiff's visiting privileges; instead, those decisions were based solely on the information provided in the investigative reports and was done to promote the safety and security of the inmates and staff at SCI Houtzdale. Moreover, Glunt states that, even if had been aware of Plaintiff's protected activity, such knowledge would not have contributed to his decision, which was based solely on information he received as a result of the April 5, 2012

incident and the subsequent investigation.  (Close Decl. ¶ 13; Glunt Decl. ¶ 13-14.)

At the relevant time, Hollibaugh was the Deputy Superintendent for Centralized Services at SCI Houtzdale. (Hollibaugh Decl. ¶ 1.) However, he states that, in that position, he was not involved in any of the events that contributed to or resulted in the suspension of Plaintiff's visiting privileges at SCI Houtzdale. (Hollibaugh Decl. ¶ 6.)  Further, he did not participate in any of the decision-making surrounding that decision.  Id.  Hollibaugh states that he had previously been involved with issues involving Plaintiff and Inmate Hill at another DOC institution, but he had no involvement in either the underlying investigation referenced in this matter or in the decisions that were made by others with regard to Plaintiff's visitation rights. (Hollibaugh Decl. ¶ 7.)

Prior Cases

On June 20, 2012, Plaintiff filed a petition for review in the Pennsylvania Commonwealth Court, which was docketed at No. 419 MD 2012.  Named as defendants were the Commonwealth of Pennsylvania and the DOC.  The petition alleged that the defendants had suspended her visitation and mailing privileges in violation of the First, Fourth, Eighth and Fourteenth Amendments to the Constitution and her marital communication rights/privileges. (ECF No. 34 Ex. A at 1.)  The defendants filed preliminary objections and in response Plaintiff filed an amended petition for review on August 6, 2012.  On April 9, 2013, the Commonwealth Court filed a Memorandum Opinion sustaining the preliminary objections and dismissing the amended petition for review.  Plaintiff filed an appeal in the Pennsylvania Supreme Court, docketed at No. 35 MAP 2013.  On November 20, 2013, the Pennsylvania Supreme Court entered an order affirming the judgment of the Commonwealth Court.  (ECF No. 71 Ex. 7.)

On August 10, 2012, Plaintiff submitted an application to proceed IFP in this Court in a

case which was docketed at Civ. A. No. 12-1145, Hill v. Barnacle. The motion to proceed IFP

was granted on August 13, 2012 and the complaint was filed that same day (ECF No. 3). The

complaint alleged that the defendants (the same defendants named in the pending case) violated

her First Amendment right to intimate association by suspending her visitation privileges in

retaliation for her investigation and complaints about her husband's treatment; that they violated

her right to be free from cruel and unusual punishment; and that they violated her property

interest in her mail. On November 6, 2012, the defendants filed a motion to dismiss (ECF No.

13), in which they argued that the Court should abstain from exercising jurisdiction pursuant to

Younger v. Harris, 401 U.S. 37 (1971), because at that time, Plaintiff had pending a petition for

review in the Commonwealth Court, as described above. Plaintiff filed her brief in opposition on

December 4, 2012 (ECF No. 19). On January 3, 2013, a Memorandum and Order was entered

(ECF No. 20), granting the motion to dismiss on the ground of Younger abstention. Plaintiff

filed a notice of appeal (ECF No. 21), but on May 17, 2013, the Court of Appeals affirmed the

judgment of this Court (ECF No. 24).

Meanwhile, on November 20, 2012, Plaintiff initiated a second case, Hill v. Pennsylvania

Department of Corrections, docketed at No. 12-1697, which purported to raise civil rights claims

on behalf of Dwayne Hill under 42 U.S.C. § 1983 against Superintendent Glunt, plus the DOC,

DOC Secretary John Wetzel, psychiatrist Dr. Khatri and psychologists Walmer and Errigo, for

alleged violations of his Eighth and Fourteenth Amendment rights, as well as state law claims of

negligence and mental anguish. On November 28, 2012, a Report and Recommendation (R&R)

was filed (ECF No. 3), recommending that the complaint be dismissed for lack of standing. The

R&R concluded that Plaintiff had no right to bring claims on behalf of her husband as she had

not been appointed his legal representative and, in any event, claims on behalf of another

individual must be presented by counsel. Plaintiff filed objections (ECF Nos. 4, 5), but on December 18, 2012, Judge Fischer entered an order adopting the R&R and dismissing the case (ECF No. 6). Again, Plaintiff filed a notice of appeal (ECF No. 7), but on April 25, 2013, the Court of Appeals affirmed the judgment of this Court (ECF No. 10).

Procedural History

Plaintiff filed a motion to proceed IFP on November 7, 2013. The motion was granted on November 8, 2013 and the complaint was filed that same day (ECF No. 3). She invokes § 1983 and alleges "retaliatory suspension of her visiting and mail privileges and the confiscation of her correspondence in violation of the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution and her marital communications privilege." (Compl. at 1.) She sues the Defendants in their individual capacities and requests an injunction restraining them from enforcing the suspension and restoring her visitation privileges, "compensatory damages in an unspecified amount," "punitive damages in an unspecified amount," and "such other relief as it may appear the plaintiff is entitled." (Compl. at 7.) Attached to the Complaint are a number of documents which, Plaintiff contends, support her retaliation claim.

On February 19, 2014, an Amended R&R was filed (ECF No. 11),[8] recommending that the Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). On March 18, 2014, Plaintiff filed objections (ECF No. 15), and on March 19, 2014, Judge Fischer entered an order adopting the Amended R&R and dismissing the Complaint (ECF No. 16). The Court held that Plaintiff's Complaint was barred by the doctrine of res judicata and that, as the Commonwealth

---

[8] On December 23, 2013, an R&R was filed (ECF No. 5), recommending that the complaint be dismissed and on January 14, 2014, an order was entered (ECF No. 6) adopting the R&R as the opinion of the Court. However, on that same date, Plaintiff filed a motion for extension of time to file objections (ECF No. 7) and Judge Fischer vacated the order (ECF No. 8). Thereafter, the original R&R was vacated (ECF No. 10) and an Amended R&R was filed which superseded it.

Court had observed, she could not state a claim for retaliation when her alleged protected conduct did not occur until after her privileges were revoked.

Plaintiff filed a Notice of Appeal (ECF No. 17) on April 7, 2014. On January 23, 2015, the Court of Appeals entered a judgment (ECF No. 19) vacating the judgment of this Court and remanding the action for further proceedings. The Court of Appeals held that: 1) the doctrine of res judicata did not apply because it requires identity of parties but Plaintiff named different parties in different capacities in her state and federal lawsuits; and 2) this Court erred in relying upon the Commonwealth Court's conclusion because in fact she alleged that she began a letter writing campaign in 2011 and that her privileges were suspended in 2012. Hill v. Barnacle, 598 F. App'x 55 (3d Cir. 2015).

After the mandate issued on February 17, 2015 (ECF No. 21), service of process was made upon the Defendants. On May 19, 2015, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 34). Plaintiff filed a brief in opposition on June 15, 2015 (ECF No. 39). On September 3, 2015, an R&R was filed, recommending that the motion be granted (ECF No. 40). Plaintiff filed objections on September 30, 2015 (ECF No. 43) and an amended brief in support on October 16, 2015 (ECF No. 44). On October 28, 2015, Judge Fischer entered an order (ECF No. 45) adopting the R&R, granting the motion to dismiss and dismissing the case.

Plaintiff filed a Notice of Appeal on November 20, 2015 (ECF No. 46). On July 5, 2016, the Court of Appeals issued a judgment affirming in part, vacating in part and remanding the matter to this Court for further proceedings (ECF No. 49). As explained in the opinion (ECF No. 50 Ex. 1), the Court of Appeals held that: 1) Plaintiff had adequately alleged the element of causation by connecting her letter-writing campaign in 2011 to the first suspension of her visiting

privileges on April 12, 2012 (which it construed as a temporary suspension "pending an investigation") and by connecting the petition she filed in the Commonwealth Court on June 20, 2012 to the second suspension of her visiting privileges on June 26, 2012 (which it construed as a permanent suspension reached "as a result of an investigation") and the letters she received never specified the nature of the investigation or what Plaintiff was alleged to have done wrong; and 2) Plaintiff's complaint could be read as attempting to assert a claim for denial of due process when Defendants confiscated her mail.[9]

However, the court noted that it was not reaching the merits of Plaintiff's retaliation claim, but only holding that it was sufficient to survive the pleading stage (id. at 11). The court also did not reach the issue of whether Defendants would have suspended her visitation privileges for legitimate penological reasons even in the absence of her protected conduct, which would have been premature at the pleading stage (id. at 9 n.6). Finally, the court did not reach the issue of the Defendants' personal involvement, because this Court had not reached the issue in the first instance, and it indicated that this Court could address it on remand (id. at 13 n.8). The court affirmed the dismissal of Plaintiff's state law claims (id. at 11-12).

After the mandate issued on July 27, 2016 (ECF No. 50), an order was entered, setting a status conference for August 15, 2016 (ECF No. 52). On that date, a conference was held, but Plaintiff did not appear, nor did she contact the Court either before or after this conference was held. Deadlines were set for the Defendants to file a motion for summary judgment. (ECF No. 54.)

On September 6, 2016, Defendant filed an answer to the Complaint (ECF No. 62). On October 31, 2016, Defendants filed a motion for summary judgment (ECF No. 68). On

---

[9] Hill v. Barnacle, 655 F. App'x 142 (3d Cir. 2016).

November 10, 2016, Plaintiff filed a motion to stay her obligation to respond, contending that Defendants had not responded to her discovery requests (ECF No. 72). The Court entered an order, directing Defendants to respond to her discovery requests by November 30, 2016 and extending the time for Plaintiff to respond to the motion for summary judgment to December 21, 2016 (ECF No. 73). On December 6, 2016, Plaintiff a motion for extension of time (ECF No. 74), which was granted by text order dated December 7, 2016 (ECF No. 75), giving her until February 28, 2017 to respond to the motion for summary judgment.

On January 6, 2017, Plaintiff filed a motion to compel discovery (ECF No. 76). On January 9, 2017, the Court entered an order granting the motion insofar as it requested all relevant, non-privileged information and denying it insofar as it requested sanctions (ECF No. 77).

On February 7, 2017, Plaintiff filed a motion for sanctions (ECF No. 78). Later that same day, Defendants filed a response (ECF No. 79), in which their counsel stated that he had reviewed all of the information provided to the Office of the Attorney General by the DOC and concluded that Plaintiff had been provided with all documents and materials that were relevant and non-privileged in this matter by way of initial disclosures or the attachments to the summary judgment motion and that this information was conveyed to Plaintiff through correspondence sent on January 23, 2017. On February 9, 2017, an order was entered denying the motion for sanctions (ECF No. 80).

On February 9, 2017, Plaintiff filed a second motion to stay her obligation to respond to the summary judgment motion and a third motion for recusal (ECF Nos. 81, 82).[10] On February

---

[10] Plaintiff filed her first motion for recusal on March 6, 2014 (ECF No. 14). The motion was denied by a text order on March 7, 2014 "because judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (Text order dated March 7, 2014). She filed a second

10, 2017, orders were entered denying the motion to stay and the motion for recusal (ECF Nos. 83, 84). On February 22, 2017, Plaintiff filed another motion for extension of time (ECF No. 88). This motion was granted by text order dated February 23, 2017 (ECF No. 89), giving her until March 14, 2017 to file her response.

On March 1, 2017, Plaintiff filed objections to the order on the motion for sanctions (ECF No. 90). On March 3, 2017, Plaintiff filed a "Motion in Support of Objections to Magistrate's Ruling" (ECF No. 92). By text order dated March 6, 2017, Judge Fischer indicated that the motion would be terminated and the document considered as supplemental objections (ECF No. 93). On March 7, 2017, Plaintiff filed a motion for extension of time (ECF No. 94), which was granted in part, giving her until March 31, 2017 to respond to the motion for summary judgment (ECF No. 95). On March 20, 2017, Judge Fischer entered an order (ECF No. 97) which affirmed the February 9, 2017 order denying the motion for sanctions.

On March 22, 2017, Plaintiff filed what she titled "Motion in Opposition to Summary Judgment" and "Brief in Support of Opposition to Summary Judgment" (ECF No. 98). In this document, Plaintiff responded to Defendants' motion by continuing to argue that the undersigned had "coached" Defendants to claim privilege, a defense which she contended they had waived by not raising the issue themselves at an earlier date.

However, on April 4, 2017, Plaintiff filed another motion for extension of time (ECF No. 99).[11] Out of an abundance of caution, on April 21, 2017, an order was entered (ECF No. 101), granting Plaintiff until May 5, 2017 to file any further response to the motion for summary

motion for recusal on August 17, 2016 (ECF No. 56). It was denied by order dated August 18, 2016 (ECF No. 57). Plaintiff appealed this order (ECF No. 63), but on September 15, 2016, Judge Fischer denied the appeal (ECF No. 64).

[11] In addition, she also filed a "Reply in Support of Objections" (ECF No. 100), which represented a reply brief in support of her March 1, 2017 objections. However, as recited in the text, Judge Fischer had already denied Plaintiff's appeal on this issue on March 20, 2017.

judgment. On May 5, 2017, Plaintiff filed a response (ECF No. 102), in which she indicated that she had already provided her response to the motion for summary judgment.[12]

Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Defendants contend that: 1) Plaintiff's claim of retaliation should be dismissed because she points to no evidence of causation and because they have demonstrated that they would have

---

[12] Although Defendants were permitted until May 19, 2017 to file a reply brief, they did not do so.

taken the same action because of a legitimate penological reason, despite Plaintiff's alleged

protected activity; 2) Plaintiff's due process claim of suspension of her mailing privileges should

be dismissed because her mailing privileges were never suspended; and 3) she alleges no

individual involvement on the part of Defendants Barnacle and Moore, and Hollibaugh has

testified that he had no involvement in the events and Plaintiff has pointed to no evidence to

demonstrate otherwise.

Retaliation Claim

The Court of Appeals has held that:

> Retaliating against a prisoner for the exercise of his constitutional rights is
> unconstitutional. See, e.g., Mitchell v. Horn, 318 F.3d 523, 529-31 (3d Cir. 2003);
> Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001); Allah v. Seiverling, 229
> F.3d 220, 224-26 (3d Cir. 2000). To state a claim for retaliation, a plaintiff must
> allege that: (1) he was engaged in constitutionally protected conduct, (2) "he
> suffered some 'adverse action' at the hands of the prison officials"; and (3) "his
> constitutionally protected conduct was 'a substantial or motivating factor' in the
> decision" to take that action. Rauser, 241 F.3d at 333.

Bistrian v. Levi, 696 F.3d 352, 376 (3d Cir. 2012) (footnote omitted). However, "the prison

officials may still prevail by proving that they would have made the same decision absent the

protected conduct for reasons reasonably related to a legitimate penological interest." Rauser,

241 F.3d at 334. Although Plaintiff is not a prisoner, the Supreme Court has observed that its

case law in this area "involved regulations that affected rights of prisoners and outsiders."

Thornburgh v. Abbott, 490 U.S. 401, 410 n.9 (1989). The Court of Appeals has confirmed in

this case that the standard applicable to prisoners and non-prisoners in this context is the same.

(ECF No. 50 Ex. 1 at 7 n.5.)

Defendants concede that Plaintiff's act of writing a letter on November 5, 2011 to

complain about the treatment her husband was receiving was a protected activity for purposes of

a retaliation claim. (ECF No. 69 at 8.) See Mitchell, 318 F.3d at 530; Allah, 229 F.3d at 224.

Moreover, filing a complaint in court would also constitute constitutionally protected activity. Allah, 229 F.3d at 224-25. The Court of Appeals has suggested that Plaintiff's filing of the Commonwealth Court action on June 20, 2012 was protected activity with respect to the letter sent to her six days later informing her that her visiting privileges would remain suspended indefinitely. (ECF No. 50 Ex. 1 at 10.) Defendants argue that Plaintiff's June 20, 2012 filing could not have motivated actions taken by Brumbaugh and Close on April 12, 2012 (the interim decisions to suspend) because they occurred two months before. They also argue that, with respect to the decision made by Glunt on June 26, 2012 to continue Plaintiff's visiting privileges suspension indefinitely, Glunt has stated under penalty of perjury that he was not aware of the petition she filed in the Commonwealth Court on June 20, 2012 (Glunt Decl. ¶ 14) and there is nothing in the record to suggest otherwise. Indeed, they note that the petition she filed named only the DOC, not SCI Houtzdale or any individual corrections defendant. (ECF No. 71 Ex. 7.)

They also do not contest that the suspension of her visitation privileges could constitute an "adverse action." "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah, 229 F.3d at 224-25 (citation omitted). See Cooper v. Hoover, 2006 WL 3544711, at *2 (M.D. Pa. Dec. 8, 2006) (inmate who alleged he was denied visits from his daughter in retaliation for challenging his sentence and filing grievances stated a claim under the First Amendment).

However, Defendants contend that Plaintiff has failed to present sufficient evidence of a causal connection between her alleged protected activities (the letter she sent on November 5, 2011 and the petition filed in the Commonwealth Court on June 20, 2012) and the adverse actions (the suspensions of her visitation privileges, which occurred on April 12, 2012 and June

26, 2012, respectively).  Moreover, they contend that they have proffered evidence that they would have made the same decisions absent the protected conduct for reasons reasonably related to a legitimate penological interest.

The Court need not resolve whether Plaintiff has presented sufficient evidence of causal connections because, in any event, Defendants have demonstrated that they would have taken the same actions absent the protected conduct for reasons reasonably related to a legitimate penological interest.  That is, they conducted an investigation into Inmate Hill's assault upon CO Rightnour on April 5, 2012 and concluded that Plaintiff had been aware of the planned assault beforehand and had encouraged and supported his actions in this regard.

As the Court of Appeals recently reiterated:

> The Supreme Court repeatedly has emphasized that maintaining internal security and order in jails and prisons are "legitimate governmental objectives" and that courts must give prison officials considerable discretion to manage internal security in their institutions.  See, e.g., Sandin v. Conner, 515 U.S. 472, 482-83 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment."); Hewitt v. Helms, 459 U.S. 460, 472 (1983) ("Prison administrators … should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (quoting Bell [v. Wolfish], 441 U.S. [520,] 547 [(1979)], receded from on other grounds by Sandin, 515 U.S. at 482-83; Bell, 441 U.S. at 561 ("Ensuring security and order at the institution is a permissible non-punitive objective, whether the facility houses pretrial detainees, convicted inmates, or both").  Courts must afford such deference because "assessing the seriousness of a threat" requires officials to do more than simply take stock of the "specific facts surrounding a particular incident; instead they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners inter se, and the like."  Hewitt, 459 U.S. at 474.

Steele v. Cicchi, No. 14-3127, at 19-20 (3d Cir. May 3, 2017).

The Court also takes judicial notice of Plaintiff's prior history of having her visiting privileges suspended and reinstated.  In Pfender v. Secretary Pa. Dep't of Corrections, 2011 WL

680203 (M.D. Pa. Feb. 16, 2011), aff'd, 443 F. App'x. 749 (3d Cir. 2011), the court recounted

that Plaintiff (then named Donna Pfender) was barred from visiting any state correctional

institution from 2008 to January 7, 2011 after Dwayne Hill (who was then her common-law

husband) was found to be in possession of a satellite photograph showing a complete aerial view

of SCI Huntingdon's layout, which could have been used as an implement of escape.  After

confirming that the due process clause does not provide an interest in prison visitation and noting

that Plaintiff made no showing that Pennsylvania law created a protected liberty interest in

visiting privileges, the Court of Appeals held that any right that might exist was necessarily

circumscribed by the need to afford deference to prison officials in the exercise of their

professional judgment.

The Court of Appeals held that:

> The suspension imposed upon Pfender was "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Superintendent Lawler explained that, after an investigation, it was determined that Pfender had supplied Hill with an aerial photograph of the prison's layout. The photograph was undeniably an item of contraband because an inmate could use it to plot an escape. Pfender's visiting privileges were suspended in accordance with DOC regulations, and she was afforded an opportunity to seek reinstatement after two years. We agree with the District Court that there is a rational basis for imposing this type of limitation upon the visiting privileges of an individual who is determined to have supplied an inmate with a prison layout photograph. Prison officials have a legitimate penological interest in preventing inmates from possessing items that can be used to escape, see, e.g., United States ex rel. Tyrrell v. Speaker, 535 F.2d 823, 827 n.5 (3d Cir. 1976), and in restricting the visiting privileges of individuals determined to pose a security risk by providing such items to an inmate.

Id. at 752-53 (footnotes omitted).  Similarly, there is a rational basis for suspending the visiting

privileges of an individual who is determined to have supported and encouraged her husband to

commit an assault upon a corrections officer in order to avoid being celled with another prisoner.

Prison officials have a legitimate penological interest in preventing acts of violence within the

prison and in restricting the visiting privileges of individuals determined to pose a security risk by encouraging such behavior.[13]

The notice sent to Plaintiff referred her to the following section of the Administrative Code:

> Any visitor's privileges may be limited, suspended, or restricted (such as non-contact visits only or a restriction on visiting at more than one facility) if information becomes available suggesting that allowing the individual to visit poses a threat to the safety and security of any Department facility.

DC-ADM 812, Section 1.B.8, available at www.cor.state.pa.us. It is noted that this language is identical to the language in the Pfender case, then numbered DC-ADM 812.VI.A.2.i

The Brumbaugh Report concluded that the assault by Inmate Hill had been preplanned and the Security Office had concluded based upon a letter written on April 2, 2012 and a phone call placed on April 5, 2012 that Plaintiff had knowledge of the impending assault and also encouraged Inmate Hill to do "whatever was necessary" to get his Z Code so that he would not have to be housed with another inmate. The Report continued as follows:

> it was discovered that Donna Pfender Hill had been previously suspended from SCI Huntingdon for introduction of contraband being implements of escape (maps) when Hill was housed at SCI Huntingdon. As a result, Pfender Hill was suspended permanently in 2008; however, that suspension was lifted on July 8, 2010 by Regional Deputy Secretary Randall Britton. Upon the suspension being lifted, Hill received six months of non-contact visits with full contact visits being reinstated on January 1, 2011. However, on September 22, 2011, Hill received a

---

[13] The Court of Appeals referred to Plaintiff's previous suspensions as being "on grounds not presently at issue" and on "apparently unrelated grounds." (ECF No. 50 Ex. 1 at 2, 9 n.6.) It was Superintendent Glunt who explicitly reminded Plaintiff that she had been "suspended indefinitely on prior occasions and have been reinstated, only to return to behavior that poses a threat to the safety and security of the facility that houses your husband." (ECF No. 71 Ex. 5.) Moreover, the investigation itself outlined Plaintiff's history of having her visiting privileges suspended and reinstated as quoted in the text. Thus, although the suspension of Plaintiff's visiting privileges in 2012 was not "related to" her prior suspensions, prison officials certainly acted within their discretion and authority by citing her history of suspensions and reinstatements when determining the appropriate response in this case, just as a court would in sentencing a repeat offender.

misconduct for engaging in sexual acts with Pfender Hill in the visiting room and was again given no contact visits until November 28, 2011, at which time once again, the no [sic] contact visits were reinstated. Pfender Hill has been suspended on numerous occasions for sexual acts, introducing contraband, and disrespecting staff. She and Inmate Hill have been given numerous opportunities to abide by DOC policy and procedures; however, it is clear that she and Inmate Hill cannot abide by DOC policy and procedure.

(ECF No. 71 Ex. 6 at 2-3.)

Finally, Defendants point out that, as Glunt indicated in the July 30, 2012 letter, Plaintiff was not prohibited from visiting her daughter, who was in DOC custody at another state correctional institution. Defendants argue that, had their motive been retaliation rather than a legitimate concern for the safety and security of SCI Houtzdale based upon what they reasonably believed to be Plaintiff's support for her husband's actions, they would not have made this exception to the suspension of her visiting privileges. (ECF No. 71 Ex. 5; Glunt Decl. ¶ 17.)

In response, Plaintiff argues that Defendants cannot claim privilege with respect to the documents referred to in the Brumbaugh Report, specifically a letter dated April 2, 2012 in which an individual named "Angel Jackson" allegedly counseled Inmate Hill to engage in violence and the Brumbaugh Report states that the Security Office concluded that "Angel Jackson" was an alias Plaintiff was using to avoid detection. (ECF No. 100 at 2.) Plaintiff's argument that there is no reason to believe that the April 2, 2012 letter is privileged is not without force.

At recited above, however, the issue in this case is whether Defendants have proffered sufficient evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. For the reasons outlined above, they have done so. The absence of the April 2, 2012 letter from the record in this case does not alter this conclusion.

Plaintiff's position is, in effect, that she cannot respond further to the summary judgment motion unless she is provided with the April 2, 2012 letter, but this argument is untenable. She appears to believe that this Court should engage in a reexamination of whether Defendants were "correct" when they concluded that she had used an alias to communicate with her husband and encourage him to engage in violence in order to avoid being double-celled.[14] This Court does not sit as an appellate court reviewing the decision of the prison authorities. As the Supreme Court held in a similar context:

> the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133-134, 44 S.Ct. 260, 260-261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (8th Cir. 1974). We decline to adopt a more stringent evidentiary standard as a constitutional requirement.

Superintendent, Massachusetts Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455-56 (1985).

Similarly, this Court does not need to examine all the evidence used by Defendants to reach their conclusion. In this case, Plaintiff has a well-documented history of having her visiting privileges suspended and reinstated and in the incidents that led to this case, Superintendent Glunt sent her a series of notices informing her that: 1) her visitation privileges were suspended pending an investigation; 2) upon review of the investigation information, the

---

[14] Plaintiff has not actually asserted that Defendants erroneously concluded that she used an alias to encourage her husband to assault a corrections officer. Moreover, even if she had done so, her "denial of culpability does not create a triable issue on the question of whether the suspension of her visiting privileges bears a rational relationship to legitimate penological interests. On that substantive question, summary judgment was properly entered for defendants." Pfender, 443 F. App'x at 753 (footnote omitted).

decision was made to make her suspension indefinite; and 3) her actions and support of her husband's behavior posed "a threat to the safety and security of this facility." Moreover, as detailed in the Brumbaugh Report, after concluding that Plaintiff had encouraged her husband's assault upon CO Rightnour under an alias, the Security Office reviewed the prior incidents in which Plaintiff's visiting privileges were suspended and then subsequently reinstated and ultimately concluded that a permanent suspension of her privileges was the appropriate response. Defendants have sufficiently demonstrated that they would have taken the same actions regarding Plaintiff's visiting privileges regardless of her protected activities, based upon the assault on CO Rightnour and Plaintiff's history of violating DOC policies and procedures. Therefore, she cannot maintain a claim for retaliation and in this respect, Defendants' motion for summary judgment should be granted.

Mailing Privileges Claim

Plaintiff alleges that she was denied due process of the law when Defendants suspended her mailing privileges and she claims a "property interest" in her mail. Defendants argue that the record as established demonstrates that her mailing privileges were never suspended.

In the Complaint, Plaintiff alleged that:

Through other correspondence with Defendant Glunt and Defendant Hollibaugh (in response to grievance number 408836), plaintiff learned that her mail privileges had been suspended as well. (See: Exhibit 9)

(Compl. ¶ 17.) Exhibit 9 is a copy of Final Appeal Decision sent to Inmate Hill on June 22, 2012, in which Chief Grievance Officer Dorina Varner informed Inmate Hill that:

You state that on 4/12/12, the security office suspended your visiting and mail privileges without notice or justification and as a result, you are unable to meet your legal deadlines. You request to be reimbursed for your wife's traveling expenses and all other relief that you are entitled to.

The record shows that due to an investigation, a letter was sent to your wife on

23

4/12/12, notifying her that her mail and visiting privileges were suspended indefinitely. Your mail and visiting privileges have not been suspended. You offer no reasoning or proof as to why your legal deadlines could not be met. This office upholds the decisions of the Grievance Officer and the Facility Manager in denying your grievance and requested relief.

(Compl. Ex. 9.)

However, the actual letter sent to Plaintiff on April 12, 2012 stated that:

Effective immediately, your visiting privileges at SCI Houtzdale are suspended indefinitely due to a pending investigation.

(ECF No. 71 Ex. 2.) The Brumbaugh Report similarly makes no reference to any suspension of Plaintiff's mailing privileges (ECF No. 71 Ex. 6), nor does the letter sent to Plaintiff from Superintendent Glunt on July 30, 2012 (ECF No. 71 Ex. 5). Finally, Brumbaugh has declared subject to the penalty of perjury that:

I do not believe that Plaintiff's mail privileges at SCI-Houtzdale were suspended. I do not recall requesting or ordering that Plaintiff's mail privileges be suspended and, again, to the best of my knowledge, Plaintiff always maintained the right to send and receive mail to and from Inmate Hill while he was confined at SCI-Houtzdale.

(Brumbaugh Decl. ¶ 21.)

Thus, Defendants contend that the record as developed reveals that there is no basis for a claim that Plaintiff's mailing privileges were ever suspended. Other than the allegation in the Complaint, which is based upon a response to a grievance filed by Inmate Hill (not the document actually sent to Plaintiff), which Defendants indicate appears to contain an error in referring to suspension of Plaintiff's mailing privileges, there is no support for the claim that her mailing privileges were ever suspended. Plaintiff does not allege that any mail she attempted to send to Inmate Hill was returned to her or that any mail he attempted to send her was returned to him. Therefore, to the extent that she alleges a claim arising out of suspension of her mailing privileges, the developed record demonstrates that she was never subjected to a suspension of

these privileges. Defendants' motion for summary judgment with respect to this claim should be granted.

<u>Lack of Personal Involvement</u>

Finally, Defendants argue that the record, as developed, demonstrates that there is no basis for allowing Plaintiff's claims against Defendants Barnacle, Hollibaugh and Moore to continue. As Defendants have testified and the evidence demonstrates, Defendant Brumbaugh conducted the investigation and made an initial decision to suspend Plaintiff's visiting privileges, Close made an interim decision to suspend her privileges pending further investigation and Glunt ultimately made the decision to suspend her privileges indefinitely. (Brumbaugh Decl. ¶ 10; Close Decl. ¶¶ 7-8; Glunt Decl. ¶¶ 8-9.) But Barnacle, Hollibaugh and Moore had no involvement in these events that led to Plaintiff's claims.

"To establish liability for deprivation of a constitutional right under § 1983, a party must show personal involvement by each defendant." <u>Coulson v. Mooney</u>, 2015 WL 1034632, at *2 (M.D. Pa. Mar. 1, 2015) (citations omitted). <u>See also</u> <u>Hodges v. Mankey</u>, 2014 WL 7338760, at *5 (W.D. Pa. Dec. 22, 2014). Plaintiff has not alleged or shown any personal involvement on the part of Defendants Barnacle, Hollibaugh and Moore relevant to the claims raised in this case. Therefore, for this reason, they should also be dismissed from the case for this reason.

For these reasons, it is respectfully recommended that the motion for summary judgment filed by the Defendants (ECF No. 68) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by June 12, 2017. Any party opposing the objections shall file a response by June 26, 2017. Failure to file timely objections will waive the right of appeal.

Respectfully submitted,


s/Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge


Dated: May 24, 2017

cc:     Donna M. Hill
        1110 Steuben Street
        Apt. 213
        Pittsburgh, PA 15220