**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

DONNA M. HILL,                              )
                                           )
          Plaintiff,                     )
                                           )       Civil Action No. 2:13-cv-1604
          v.                             )       Honorable Nora Barry Fischer
                                           )
JAMES BARNACLE, et al.                     )       *ELECTRONICALLY FILED*
                                           )
          Defendants.                    )
                                           )

## MEMORANDUM OPINION

In this a civil rights action under 42 U.S.C. § 1983 Plaintiff, Donna M. Hill ("Mrs. Hill"), alleges that her prison visitation rights were unlawfully suspended. Specifically, she claims that in 2012 the Defendants retaliated against her for having engaged in protected activity, including her longtime work as a prisoners' rights advocate, a letter-writing campaign she undertook in support of her husband, inmate Dwayne Hill, and her history of litigation involving the Department of Corrections. (Docket No. 3). After a lengthy procedural history, three Defendants remain in this matter: Steven Glunt, David Close, and Byron Brumbaugh, each of whom was employed by the Pennsylvania Department of Corrections in 2012 and took part in the decision to indefinitely suspend Mrs. Hill's visitation privileges. (Docket No. 137, at 3-5). However, Defendants deny a retaliatory purpose in suspending Plaintiff's visitation privileges, and instead argue that the decision was rationally related to their legitimate penological interest in protecting the safety and security of the prison facility. (*Id.*).

Presently before the Court are two motions *in limine* filed by Defendants; the first seeks to exclude testimonial and documentary evidence concerning Mrs. Hill's history of prison rights

advocacy, while the second seeks to exclude letters sent between Mrs. Hill, Dwayne Hill, and various Department of Corrections officials following the suspension of her visitation privileges. (Docket Nos. 203; 206). The Court has received and reviewed Defendants' Motion *in Limine* (First) and their Brief in Support thereof, (Docket Nos. 203; 204), as well as Plaintiff's Response and Brief in Opposition, (Docket Nos. 210; 211). Likewise, the Court has considered Defendants' Motion *in Limine* (Second) and Brief (Docket Nos. 206; 207), along with Plaintiff's corresponding Response and Brief (Docket Nos. 212; 213). The Court held oral argument concerning both motions on May 6, 2021.[1] (Docket Nos. 216; 219). Accordingly, these motions are ripe for disposition. For the reasons that follow, Defendants' Motion *in Limine* (First) is granted; Defendants' Motion *in Limine* (Second) is granted, in part, and denied, in part.

## I.  BACKGROUND

### A.  Factual History

Mrs. Hill is a longtime prisoners' rights advocate whose husband, Dwayne Hill ("Mr. Hill"), and daughter, Charmaine Pfender ("Ms. Pfender"), are both serving life sentences in the custody of the Pennsylvania Department of Corrections ("DOC"). (Docket No. 149-1, at 2-3). Mrs. Hill's claims are based upon events alleged to have occurred while her husband was incarcerated at SCI Houtzdale in 2011 and 2012. During that time, Defendant Steven Glunt was the Superintendent at this facility, Defendant David Close was the Deputy Superintendent for Facilities Management, and Defendant Byron Brumbaugh was the Intelligence Captain. (Docket No. 137, at 3-5).

---

[1] The Court notes that the filing of the transcript of the May 6, 2021 oral argument in this matter was delayed by Defendants' failure to pay the court reporter's invoice. Notwithstanding the same, the transcript was filed on the record on August 2, 2021 with the Court's permission.

In 2011, Mrs. Hill learned that Mr. Hill had allegedly been sexually assaulted by a DOC officer at SCI Houtzdale. (Docket No. 173, at 2). Although Mr. Hill reported the alleged incident, his report was deemed unfounded. (Docket No. 3, at ¶ 10). As a result of his complaint about the sexual abuse, Mrs. Hill contends that her husband began to suffer threats, violence, and other repercussions from the prison staff, including the mental health unit stopping his medication and counseling sessions. (*Id.* at ¶ 11). Shortly thereafter, Mr. Hill was also removed from his Z-Code (single cell) status, which he was originally given due to claustrophobia and had maintained for most of the time during his almost 20 years' incarceration. (*Id.*). When DOC staff tried to place Mr. Hill in a double cell with another inmate, an incident ensued, and Mr. Hill was ultimately sent to the Restricted Housing Unit after allegedly setting a mattress on fire. (*Id.*).

In response to her husband's problems while incarcerated, Mrs. Hill wrote letters to various news outlets, state lawmakers, and prison officials, including a letter dated November 5, 2011 to DOC Secretary John E. Wetzel. (Docket No. 149-1, at 4; Docket No. 149-4, hereinafter "the November 5 letter"). The November 5 letter reflects that copies were also sent to "Supt. Glunt, State lawmakers, news media and Dwayne Hill." (Docket No. 149-4). This letter expressed Mrs. Hill's concerns about her husband's physical and mental health and requested an investigation as to why her "husband was so abruptly no longer seen by a therapist, taken off the mental health tracking list and was forced to be placed into a cell with another prisoner, which terrified him." (*Id.*).

On April 5, 2012, the same day that Mr. Hill was released from the Restricted Housing Unit following the mattress incident, there was another incident between Mr. Hill and corrections officer ("CO") Rightnour. The nature of this incident is disputed. Defendants claim that Mr. Hill again

refused to be put into a double cell with another inmate and then, without provocation, began punching CO Rightnour in the head and face.[2] (Docket No. 138-1, at 15). Then, Mr. Hill allegedly confronted other staff members who arrived at the scene, threatening to kill them with a pen he retrieved from his cell. (*Id.*). Mrs. Hill and her husband dispute that Mr. Hill ever assaulted CO Rightnour. (Docket No. 149-2, at 4). Rather, Mrs. Hill asserts that when her husband was released from isolation, prison officials attempted to place him in a cell with a known violent offender, and he informed the CO that he feared for his life and could not be double-celled. (*Id.*). The CO then became combative, began making orders and threats, and attempted to push Mr. Hill into the cell. (*Id.*). When that was unsuccessful, the CO falsely accused Mr. Hill of assaulting him. (*Id.*). After this incident, Mr. Hill was once again placed in the Restricted Housing Unit, where Mrs. Hill claims he continued to suffer retaliation from DOC staff, including having his food tampered with and having his personal belongings go missing. (Docket No. 3, at ¶ 13).

Defendant Brumbaugh was assigned to investigate the April 5 incident. The information and conclusions in his report (the "Brumbaugh Report"), dated April 11, 2012, are heavily disputed by the parties. With respect to the incident itself, the Brumbaugh Report concludes that Mr. Hill committed an unprovoked physical assault on CO Rightnour. (Docket No. 138-1, at 15). Specifically, the report states:

> Rightnour stated that as he was making a guard tour, [Mr.] Hill informed him that he wasn't going to do the "double cell" thing Rightnour responded by telling Hill that if he refused to enter the cell upon termination of block out, he would have to issue Hill a [misconduct]. Hill replied by saying, "Well, I'm not going in when block out is over." When Rightnour turned and walked away from

---

[2] Although Defendant Glunt referenced video evidence of the assault, it was never produced to the Court. (Glunt Depo., Docket No. 138-3, at 36).

> Hill, Hill began punching Rightnour in his face and head with a closed fist. At this point, Rightnour tucked his head and attempted to "cover up" but Hill continued to strike him. As staff arrived, Hill stopped and stood in his doorway saying, ". . . come get some." As additional staff began to arrive, Hill entered his cell and the door was secured. Staff observed Hill inside of his cell pick up a Bic pen from the desk and state, "Come on . . . I wanna kill one of you." Eventually Hill agreed to be cuffed through the cell wicket and was escorted to the Restricted Housing Unit without further incident.

*Id.*

The Brumbaugh Report further concludes, based upon a letter and a phone call between Mr. and Mrs. Hill, that Mrs. Hill had prior knowledge of her husband's intent to assault a CO and had encouraged him to do so. (*Id.*; Brumbaugh Decl., Docket No. 138-1 at 36). In support of that conclusion, the report cites an April 2, 2012 letter, which Mrs. Hill admits writing under the fictitious name "Angel Jackson," in which she tells her husband: "I also think they don't want to mess with you about the Z Code until your time is up. If I was you, I know what I'd do, but I can't say. They would use it against me." (*Id.* at 16; Docket No. 149-1, at 6-7). Mrs. Hill argues that by "I know what I'd do," she was referring to her advocacy work and not encouraging violence. (Docket No. 149-1, at 6-7).

The Brumbaugh Report also indicates that Mrs. Hill spoke to Mr. Hill on the phone just hours prior to the incident with CO Rightnour on April 5, 2012. (Docket No. 138-1, at 16). The report summarizes the content of the call as follows:

> Hill states that he will be going back to the L-5 tonight because he was placed in a double cell. Pfender tells Hill to do what he needs to do and she supports him no matter what he does and its [sic] no big deal for her. She will still get to see Hill through their visits and if she can do anything to help, just ask.

(*Id.*). The report notes that Mrs. Hill was using a telephone number other than her own so that she would not be monitored or create suspicion, and the transcript of the April 5 call confirms that Mrs. Hill was once again using the alias "Angel." (Docket Nos. 138-1, at 16; 149-6). Mrs. Hill denies making the statements attributed to her during the April 5 phone call. (Hill Decl., Docket No. 149-1, at 6). A transcript of the call confirms that the statements attributed to Mrs. Hill were not verbatim quotes from the conversation. (Docket No. 149-6).

The Brumbaugh Report also references several previous incidents involving Mrs. Hill that took place either at SCI Houtzdale or institutions where her husband was formerly incarcerated, including three prior suspensions. The report notes that Mrs. Hill had been suspended from SCI Huntingdon permanently in 2008 for introducing contraband, namely "implements of escape (maps)", but this suspension was lifted in 2010. (Docket No. 138-1, at 16). The Brumbaugh Report also references a prior sexual conduct suspension, wherein Mrs. Hill's visiting privileges at SCI Forest were initially suspended on August 13, 2007, though her suspension was lifted on September 4, 2007. (*Id*). Lastly, the Brumbaugh Report concludes that Mrs. Hill had been previously suspended for "disrespecting staff." However, Defendants have since admitted that Mrs. Hill has never been suspended for that reason. (Docket No. 138-2, at 77-78).

Based upon his investigation and report, Defendant Brumbaugh recommended that Mrs. Hill "be permanently suspended from visiting inmate Dwayne Hill, BQ5093." (Docket No. 138-1, at 17). Defendant Close, who was filling in for Superintendent Glunt, reviewed the report and suspended Mrs. Hill's visiting privileges at SCI Houtzdale indefinitely pending further investigation. (Docket No. 138-1, at 30-31). The matter was then referred to DOC's Office of Special Investigations and Intelligence ("OSII") for further investigation. (Close Decl., Docket No. 138-1, at 31).

6

On April 12, 2012, before being made aware of the Brumbaugh Report or its recommendation, Mrs. Hill went to visit her husband but was told that her visiting privileges were suspended and directed to leave without further explanation. (Docket No. 149-1, at 4). Mrs. Hill called SCI Houtzdale and spoke to Defendant Brumbaugh, who had her come back inside to discuss her suspension. (*Id.* at 5). In the days that followed, Mrs. Hill received a letter dated April 12, 2012, which informed her that her visiting privileges were being suspended indefinitely due to a pending investigation and that any questions should be directed to Captain Brumbaugh. (Docket No. 3-1, Exhibit 9, hereinafter the "April 12 letter"). Defendant Glunt's name appears on the letter, but it is signed by Defendant Close, a customary practice in the Superintendent's absence. (*Id.*). Mrs. Hill continued to speak to Defendant Brumbaugh in the following weeks, during which time Mrs. Hill claims that Brumbaugh called her husband "a bad person, a monster, and threatened that [he] would never get out of solitary confinement" and threatened that he "would end [her] marriage."[3] (*Id.*).

In response, on June 19, 2012, Mrs. Hill filed a petition for a *writ of mandamus* in the Commonwealth Court of Pennsylvania seeking to enjoin the suspension of her visiting privileges and "direct[] Glunt to explain the basis for the suspension."[4] (Docket No. 149-1, at 5; *see* Commonwealth Court Docket, Docket No. 138-1, at 19-2). Shortly thereafter, in a letter dated June 26, 2012, Defendant Glunt advised Mrs. Hill that he made the final decision to suspend her visiting privileges indefinitely. (Docket No 138-1, at 9). Glunt did not provide Mrs. Hill with an explanation

---

[3] Defendant Brumbaugh denies having made these remarks. (Brumbaugh Depo., Docket No. 138-2, at 79-80).

[4] The Pennsylvania Commonwealth Court ultimately dismissed Mrs. Hill's petition on the merits. *See Hill v. Dep't of Corr.*, No. 419 M.D. 2012, 2013 WL 3970256, at *2 (Pa. Commw. Ct. 2013), *aff'd*, 80 A.3d 376 (Pa. 2013).

for the suspension. (*See id*.). Glunt has since stated that his decision was based on the OSII investigation and the Brumbaugh Report. (Docket No. 138-1, at 25).

On July 17, 2012, Mrs. Hill wrote to Defendant Glunt asking why her visiting privileges were suspended. (Docket No. 138-1, at 11). Glunt responded in a letter dated July 30, 2012, which read:

> [Y]our actions and support of your husband's behavior poses a threat to the safety and security of this facility. Serious staff injury resulted
>
> . . . You have been suspended indefinitely on prior occasions and have been reinstated, only to return to behavior that poses a threat to the safety and security of the facility that houses your husband. The broad discretion shown by reinstating your visiting privilege has not yielded the expected positive results. As such, the suspension will continue.

(Docket No. 138-1 at 13).

Mrs. Hill's visitation privileges were ultimately restored on November 28, 2016, at which time she was allowed non-contact visits. (Transcript of Oral Argument (hereinafter "Oral Argument"), May 6, 2021, Docket No. 219, at 15.)

### B. Procedural History

In November of 2013, Mrs. Hill initiated this action *pro se* by filing a Complaint alleging that Defendants suspended her visiting privileges in retaliation for engaging in protected activity. (Docket No. 3). This case has a lengthy history, having been appealed to and vacated and remanded by the Third Circuit three times. *See Hill v. Barnacle*, 598 F. App'x 55 (3d Cir. 2015); *Hill v. Barnacle*, 655 F. App'x 142 (3d Cir. 2016); *Hill v. Barnacle*, 751 F. App'x 245 (3d Cir. 2018).

Upon the third remand, the Magistrate Judge appointed Mrs. Hill counsel and the parties engaged in discovery. Defendants filed a Motion for Summary Judgment, which Plaintiff naturally

opposed. (*See* Docket Nos. 135; 136; 147; 155). The Magistrate Judge issued a Report and Recommendation, recommending that Defendants' Motion for Summary Judgment be granted. (Docket No. 158). Plaintiff's Objections to the Report and Recommendation were fully briefed by the parties. (Docket Nos. 159; 161; 166; 168). This Court ultimately granted summary judgment, in part, as to Defendants James Barnacle, Kenneth Hollibaugh, and Heather Moore, but sustained Plaintiff's Objections to the Report and Recommendation and denied summary judgment as to Defendants Glunt, Close, and Brumbaugh. (Docket Nos. 163; 169; 170). Accordingly, the matter is set to proceed to trial against the three remaining Defendants, and the parties have filed their pretrial statements, witness lists, and their exhibit lists, as well as their respective objections thereto. (Docket Nos. 173; 181; 184-189; 191; 192).

In advance of trial, Defendants have filed the two instant motions in *limine*. (Docket Nos. 203; 206).

## II.  LEGAL STANDARD

Defendant's motions in *limine* seek to exclude proffered testimony and documentary evidence from being admitted at the trial of this matter. The admissibility of evidence is governed by the Federal Rules of Evidence, granting the Court discretion to "decide any preliminary question about whether… evidence is admissible." Fed. R. Evid. 104(a). Defendants seek to exclude the evidence in question on the grounds of relevance. Federal Rule of Evidence 401 defines relevant evidence as that which has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401. Generally, relevant evidence is admissible, while evidence that is not relevant is not admissible. Fed. R. Evid. 402. However, the Court also maintains

discretion to limit the admissibility of relevant evidence under Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see also Egan v. Delaware River Port Authority*, 851 F.3d 263, 276 (3d Cir. 2017).

## III. ANALYSIS

### a.  Defendants' Motion *in Limine* (First)

Defendants' first motion challenges the relevance of the proposed testimony of eleven witnesses that Plaintiff intends to call in order to establish her "longtime advocacy for prisoners' rights," as well as ten documents which Plaintiff intends to introduce to establish her prior advocacy and history of litigation with the DOC. (Docket Nos. 185; 203). Defendants argue that none of these witnesses or documents make a fact of consequence in this matter more or less probable, since each witness and document fails to prove that the individual Defendants were aware of Mrs. Hill's history of prisoners' rights advocacy and/or litigation involving the DOC at the time they issued the suspension. (Docket Nos. 203; 204). Mrs. Hill responds that her history of advocacy and litigation is the constitutionally protected conduct for which the Defendants retaliated against her, and that she intends to use the evidence in question to show the extent of her protected activity. (Docket No. 211). She believes that breadth of her record as an advocate and litigant is itself circumstantial evidence that the Defendants must have taken her history into account when making their decision. (*Id.*).

While Mrs. Hill's prior involvement with various prisoner's rights groups and her previous lawsuits against the DOC are undoubtedly relevant to proving that she engaged in protected conduct, much of the evidence in question is needlessly cumulative, poses a risk of confusing the issues or misleading the jury, or is otherwise improper under the Federal Rules of Evidence. The Court will address the witnesses and documents separately, and in turn. For the reasons that follow, Defendants' Motion in *Limine* (First) is GRANTED.

       i.     Proposed Witness Testimony

Plaintiff seeks to call the following witnesses at trial for the following purposes, while Defendants seek to exclude their testimony:

- Shandre Delaney – History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill.

- Roger Thomas – History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill.

- Bret Grote – History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill. Mr. Grote, an attorney, would also testify as to the incongruence between the magnitude of the state offense in question and the resulting indefinite suspension.

- John Hargreaves - History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill.

- Jean Bickmire – No offer of proof given.

- Patricia Vickers - History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill.

- Carrington Keys - History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill.

- Kempis Songster – No offer of proof given.

- Saundra Cole - History of Mrs. Hill's advocacy.

- Theresa Warfit – No offer of proof given.

11

- Jennifer Lahn (a.k.a. Etta Cetera) - History of Mrs. Hill's advocacy and the impact the suspension had on Mrs. Hill.

(Docket No. 185). At oral argument, counsel for Mrs. Hill indicated that most of the 11 witnesses at issue are close, personal friends of Mrs. Hill, who have worked alongside her in the past. (Docket No. 219, at 18-19). Each of these witnesses is listed as a "may call" witness, and counsel was unsure of their actual availability to testify at trial. (Docket No. 219, at 12-13). Mrs. Hill does not have any declarations, affidavits, or other form of sworn statements from these witnesses, nor were they previously disclosed to the Defendants as potential witnesses under Federal Rule of Civil Procedure 26 so that they could be deposed.[5] (Docket No. 219, at 19). Further, as indicated, Mrs. Hill has not provided an offer of proof relating to three of the eleven witnesses, though their names appear as potential witnesses in her Pretrial Statement. (Docket No. 173). By virtue of Mrs. Hill's failure to provide an offer of proof relating to Ms. Bickmire, Mr. Songster, and Ms. Warfit, their testimony will be excluded without further analysis from the Court.

---

[5] As this Court has held previously, where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (citing *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997)); *see also Swankler v. Republic Food Enter. Ctr., Inc.*, Civ. No. 19-363, 2020 WL 7263547, at *2–3 (W.D. Pa. Dec. 10, 2020). Though Mrs. Hill appeared *pro se* at the start of this litigation, counsel was appointed on October 26, 2018, and the Court granted three of Plaintiff's motions for extension of time to complete discovery, with the discovery period ultimately concluding on June 13, 2019. (Docket Nos. 115; 119; 120; 123-126). During that time, counsel engaged in discovery on behalf of Mrs. Hill and had a duty to supplement any initial disclosures under Federal Rule of Civil Procedure 26(e).Thus, even setting aside the relevance of these witnesses' testimony, Mrs. Hill's failure to disclose their existence during discovery is grounds for excluding their testimony. *See, e.g., Jackson v. PNC Bank*, 2018 WL 513441 at *9-10 (W.D. Pa. Jan. 23, 2018)(declining to reopen discovery where the Court granted several discovery extensions after *pro se* litigants retained counsel).

Moreover, the offers of proof which have been provided are broad and virtually identical to one another.[6] (Docket No. 185). Each potential witness is identified as a longtime prisoners' rights advocate who has worked with Mrs. Hill, each would supposedly testify as to Mrs. Hill's history as an advocate, all but one would testify as to the impact that the suspension has had on her. (*Id.*). When pressed at oral argument, Mrs. Hill was unable to identify any specific visits to DOC facilities or interactions with DOC officials that the witnesses in question could testify about. (*See, generally,* Docket No. 219, at 11 – 21). Cumulatively, she argued that "the witnesses will have an understanding and knowledge about the breadth of her [Mrs. Hill's] advocacy[…] and will be able to supplement the information that is provided by Mrs. Hill." (Docket No. 219, at 13-14).

Importantly, Mrs. Hill plans to testify at trial about her history as a prisoners' rights advocate and litigant, as well as about the toll the suspension has taken. (Docket Nos. 173; 185). Likewise, Mr. Hill and Ms. Pfender also plan testify about Mrs. Hill's past activism and the impact of the suspension. (*Id.*). The Defendants have not objected to Mrs. Hill and her family testifying on these subjects. (*See, generally* Docket No. 203). While prior instances of Mrs. Hill's advocacy are certainly relevant to proving that she engaged in constitutionally protected conduct, this Court fails to see how the witnesses in question will provide meaningful testimony beyond that which will be provided by Mrs. Hill and her family. Similarly, while impact of the suspension on Mrs. Hill is

---

[6] Only Mr. Grote is unique among the proposed witnesses, as his work as an attorney on prisoners' rights issues sets him apart from the rest. However, his work as an attorney, including previous lawsuits against the DOC, could lead to further issues surrounding the admissibility of his testimony, including potential questions of attorney-client privilege and potential bias. As this Court noted at oral argument, this matter will not be permitted to devolve into a trial within the trial. (Docket No. 219, at 17). Further, Mrs. Hill indicated at oral argument that she is not seeking to qualify Mr. Grote as an expert witness, and thus the scope of his testimony would be limited to something akin to the other witnesses' testimony about Mrs. Hill's history of advocacy and the impact that the suspension

relevant to proving damages, the witnesses in question are limited to testifying about their observations of Mrs. Hill's demeanor,[7] whereas Mrs. Hill can testify more fully as to her mental state resulting from the suspension. *See* Fed. R. Evid. 602.

Thus, in light of the proffered testimony from Mrs. Hill, Mr. Hill, and Ms. Pfender, and absent any showing to the contrary about what relevant evidence these witnesses possess that Mrs. Hill does not, the Court believes that the speculative relevance of their testimony is substantially outweighed by the danger of needlessly presenting cumulative evidence under Federal Rule of Evidence 403. As a result, the Court will GRANT Defendants' Motion *in Limine* (First) to the extent that it seeks to exclude the testimony from the eleven witnesses in question.

ii.     Proposed Documentary Evidence

Defendants' first motion in *limine* also seeks to exclude numerous documents including:

- A 2009 article from The Movement magazine concerning Mrs. Hill's testimony at a congressional hearing about prison overcrowding (Plaintiff's Proposed Exhibit 2);

- Seven docket sheets from the various lawsuits filed between 2002 and 2013 (Plaintiff's Proposed Exhibits 13-20); and

- A 2017 article from the Philadelphia Enquirer concerning life sentences given to young adult offenders, wherein Mrs. Hill is quoted regarding her daughter, Ms. Pfender (Plaintiff's Proposed Exhibit 25).

---

had on her. (Docket No. 219, at 18).

[7] At oral argument, Mrs. Hill's counsel suggested that several of these witnesses could testify as to the "impact of the suspension" on her, "including the depressive state that it put her into," as well as about how "when this incident occurred it essentially broke her and she had difficulty with continuing her advocacy efforts and felt defeated and depressed for a significant period of time." (Docket No. 219, at 20-21). Such testimony clearly crosses the line from observation to speculation and/or diagnosis, which is not acceptable testimony from a lay witness. *See* Fed. R. Evid. 602.

(Docket No. 173). Defendants argue that none of these documents are relevant because there is no evidence of their awareness of the same, so the documents could not have informed the decision to suspend Mrs. Hill. (Docket No. 203, at 4). Mrs. Hill counters, once again, that these documents prove the nature and extent of her past activism and history as a litigant. (Docket No. 211, at 2).

At the outset, the Court has little trouble excluding the 2017 article from the Philadelphia Enquirer. Substantively, the article neither provides details about Mrs. Hill's history as a prisoners' rights advocate, nor does Mrs. Hill speak out in any way against the DOC in the limited portion of the article in which she is quoted. Instead, Mrs. Hill is briefly quoted for the proposition that Ms. Pfender was acting in self-defense during the crime for which she was convicted, as well as for the fact that Ms. Pfender has grown into a civic leader while serving her life sentence. Quite simply, this evidence proves nothing regarding Mrs. Hill's history as a prisoner's rights advocate, and it is of no relevance to the matter at hand.

In contrast, the 2009 article from The Movement magazine details Mrs. Hill's testimony about prison overcrowding at a public hearing before the Senate Judiciary Committee in November of 2009. While the fact that Mrs. Hill testified at a congressional hearing about prison overcrowding is relevant to establishing her history as an advocate, the substantive content of her testimony before Congress, which is the main focus of the article, is not relevant to the present case and has potential to confuse the jurors in this civil rights trial. Under Federal Rule of Evidence 403, the Court may exclude relevant evidence if its probative value is substantially outweighed by its potential to mislead the jury. Fed. R. Evid. 403. Given Mrs. Hill's expected testimony about her history as a prisoners' rights advocate, which will presumably cover her appearance before Congress, the probative value of the article in question is minimal. Accordingly, this Court believes that the

potential for the article in question to mislead the jury by injecting information regarding unrelated prisoners' rights issues substantially outweighs the minimal probative value contained in the article. Additionally, to the extent that Mrs. Hill wishes to use this article to prove the truth of the contents thereof (i.e. that she testified before congress as a prisoners' rights activist), the article is also objectionable as hearsay. Fed. R. Evid. 801(c). Thus, although the Movement article has some relevance, it must nonetheless be excluded from evidence as well.

Next, the Court must decide the admissibility of the seven docket sheets which make up Plaintiff's proposed exhibits 14-20. Defendants argue that none of the docket sheets are relevant because they do not reflect that any of the named Defendants was aware of the same at the time that they decided to suspend Mrs. Hill. (Docket No. 203). Mrs. Hill argues that the docket sheets establish her history of litigating against the DOC and its officials, and that the nature and frequency of her suits is circumstantial evidence that Defendants would have been aware of the same. (Docket No. 210).

Notably, however, several of the docket sheets are not indicative of litigation history between Mrs. Hill and the DOC and/or its officials. For example, proposed exhibits 14 and 15 show that Mr. Hill filed suit against various DOC officials in 2002. (Plaintiff's Proposed Exhibits 14, 15). However, Mrs. Hill was not a party to that litigation, and Mr. Hill's history of litigation cannot be imputed to her. (*Id.*). Further, Mr. Hill's prior lawsuit against the DOC is irrelevant, as he is not a named plaintiff in the present matter. Similarly, proposed exhibit 18 is a docket sheet pertaining to Mrs. Hill's 2013 lawsuit against Governor Tom Corbett and the Chair of the Pennsylvania Board of Probation and Parole. (Plaintiff's Proposed Exhibit 18). Given the fact that neither the DOC nor any of its officials are named in this suit, this exhibit lacks any probative value as it does not establish

16

Mrs. Hill's history of litigation *against the DOC.* Thus, Plaintiff's proposed exhibits 14, 15, and 18 are not admissible, as the information they contain is not relevant to Plaintiff's claims in this case.

The Court also considers Defendants' challenge to Plaintiff's proposed Exhibits 16 and 17, which are docket sheets relating to a lawsuit Mrs. Hill (then known as Donna Pfender) filed against the Secretary of the DOC, the warden of SCI Forest, and the Warden of SCI Huntingdon in 2009 in the Middle District of Pennsylvania, as well as her subsequent appeal to the Third Circuit Court of Appeals. Though brought against the DOC and its officials, none of the named Defendants in the present matter appear to be involved in this suit in any manner. The docket sheets indicate that summary judgment was granted in favor of the DOC defendants and affirmed on appeal. (Plaintiff's Proposed Exhibits 16, 17). Although these documents confirm that Mrs. Hill litigated claims against the DOC in 2009, their substance is otherwise irrelevant to the case at bar. Ultimately, their probative value is minimal given its overlap with Mrs. Hill's testimony. In contrast to their limited evidentiary value, these documents have significant potential to confuse the issues or mislead the jury, as the docket sheets are comprised almost entirely of dense, legal terminology that is wholly irrelevant to Mrs. Hill's present lawsuit. Thus, because the probative value of Plaintiff's proposed exhibits 16 and 17 is substantially outweighed by their potential to confuse the issues or mislead the jury, the Court finds that they are also inadmissible under Federal Rule of Evidence 403.

Finally, Plaintiff's proposed Exhibits 19 and 20 are docket sheets relating to a lawsuit Mrs. Hill filed in this Court against the DOC and Defendant Glunt, among others, in November of 2012, as well as her subsequent appeal to the Third Circuit Court of Appeals. The documents show that this Court dismissed the suit due to Mrs. Hill's lack of standing in December of 2012, and the Court of Appeals affirmed that decision shortly thereafter. (Plaintiff's Proposed Exhibits 19, 20).

17

Defendants argue that this lawsuit is not relevant to the present matter because it was filed after Glunt's decision to suspend Mrs. Hill indefinitely in July of 2012. (Docket Nos. 203, 204). Mrs. Hill argues that the lawsuit is relevant because she suffered the ongoing effects of Defendants' retaliation until her visitation rights were restored in 2016. (Docket No. 210). Defendants respond that Mrs. Hill has failed to plead any claim relating to ongoing retaliation, and any evidence of the same should not be considered. (Docket No. 219, at 30-31). To the extent that Mrs. Hill has not sought leave to amend her Complaint to include a claim of ongoing retaliation, the Court agrees with Defendants' position that any evidence presented at trial must be relevant to Defendants' retaliatory conduct from April through July of 2012. As such, the November 2012 lawsuit could not possibly have served as the basis for their allegedly retaliatory conduct, nor does the docket sheet itself contain any *post hoc* evidence of Defendants' retaliatory purpose. Accordingly, Plaintiff's proposed exhibits 19 and 20 are not relevant to the claims of retaliation, as pled, and must be excluded from evidence.

Therefore, the Court grants Defendants' Motion in *Limine* (First) as it pertains to the documentary evidence and Plaintiff's proposed exhibits 2, 14, 15, 16, 17, 18, 19, 20 and 25 are excluded from trial.

### b. Defendants' Motion in *Limine* (Second)

The second motion in *limine* filed by Defendants concerns five letters. (Docket No. 206). Each of the letters was written after the decision to suspend Mrs. Hill's visiting privileges in April of 2012 but before her privileges were reinstated on November 28, 2016. One letter was written by Mrs. Hill to a DOC official, while the other four letters were written by various DOC officials to either Mrs. Hill or Mr. Hill. (Docket No. 206, at 2). None of these letters was written or sent by any

of the named Defendants in this matter,[8] which in their opinion negates any probative value the letters might otherwise have. (*Id.* at 3).

Additionally, the parties again disagree about the relevance of the documents in question given that they postdate Glunt's decision to suspend Mrs. Hill indefinitely in July of 2012. For that reason, Defendants argue that none of the letters could possibly be of any relevance to the questions of whether the Defendants acted with retaliatory intent when suspending Mrs. Hill's visiting privileges. (*Id.* at 3-4). Mrs. Hill counters that each of the letters is relevant to proving both liability and damages, as the retaliatory conduct by the Defendants was ongoing until her suspension was lifted in November of 2016. (Docket No. 219, at 37, 41). Defendants respond that Mrs. Hill failed to plead any claim relating to ongoing retaliation in her Complaint. (Docket No. 219, at 39). Indeed, Mrs. Hill identifies three adverse actions at issue in this case: Brumbaugh's investigation and initial recommendation; Close's decision to suspend Mrs. Hill pending further investigation; and Glunt's decision to suspend Mrs. Hill indefinitely. (Docket No. 212, at 3). Notably, Mrs. Hill does not identify the failure to reinstate her visitation rights as an adverse action in her Complaint or in her Response. (Docket Nos. 3; 212). However, the Court need not broadly decide the relevance of these documents based on the dates of their creation, as it finds other reasons that each is inadmissible for proving the Defendants' liability.

While Mrs. Hill correctly points out that evidence of Defendants' conduct after making their decision to suspend her may still be relevant to proving that they acted with retaliatory purpose at the

---

8 Defendant Glunt was copied on a September 23, 2013 letter from Shirley R. Moore Smeal, the Executive Deputy Secretary of the DOC, to Dwayne Hill concerning his request to be removed from the Restricted Release List. Otherwise, no evidence has been set forth indicating that any of the named Defendants received or reviewed the letters in question.

time they made their decision, (Docket No. 212, at 3-4), the evidence in question falls short of meeting that standard. As Defendants noted: "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d. Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988)) (bracketed language in original). In the present case, the DOC is not a named as a defendant, and none of the named Defendants been sued in their official capacity. (*See* Docket No. 3). Thus, any evidence that Mrs. Hill seeks to offer in support of her claim that the Defendants retaliated against her because of her protected activity must personally implicate – either directly or circumstantially – at least one of the named Defendants. Because none of the letters in question prove that any of the named Defendants acted with retaliatory purpose in suspending Mrs. Hill, they are not relevant to proving the Defendants' liability in this matter.

Proposed exhibits 27, 28, and 36 are all letters sent from various DOC officials to Mrs. Hill in response to her efforts to have her visitation rights reinstated. Mrs. Hill argues that all three letters are relevant because they demonstrate the ongoing retaliatory and harassing conduct that Mrs. Hill continued to suffer even after her reinstatement. (Docket No. 189, at 5-6, 9). However, any hostility Mrs. Hill experienced from other DOC officials is not relevant, as neither the DOC nor the authors of these letters are parties to this case. Further, the letters in question do not reference or otherwise implicate any of the named Defendants, nor do they contain any other evidence which might prove their state of mind when deciding upon Mrs. Hill's suspension. (Plaintiff's Proposed Exhibits 27, 28, 36).

To the extent that Mrs. Hill argues that proposed exhibit 27 is also relevant "in that it confirms the position of the Pennsylvania Department of Corrections as to the reasons for Plaintiff's indefinite suspension," (Docket No. 189, at 5), this argument must also be rejected. First, the DOC's position as to the reason for Mrs. Hill's suspension is irrelevant since the DOC is not named as a defendant in this matter. Additionally, because Mrs. Hill seeks to use the contents of the letter to prove the truth of the matter asserted therein (i.e. the reasons for Mrs. Hill's suspension), it is hearsay. Fed. R. Evid. 801(c). Further, insofar as the letter-writer references reviewing other, unidentified records in determining the reason for Mrs. Hill's suspension, a layered hearsay objection may be appropriate. *See* Fed. R. Evid. 805.

In reference to proposed exhibits 28 and 36, Mrs. Hill alternatively argues that they are at least relevant to proving damages, as they demonstrate the efforts she put into having her visitation privileges restored. (Docket No. 189, at 6, 9). Indeed, Defendants' conceded at oral argument that the documents probably have some probative value for this limited purpose. (Docket No. 219, at 40). As such, while the Court finds that proposed exhibits 27, 28, and 36 are inadmissible for proving liability, Mrs. Hill may nonetheless introduce exhibits 28 and 36 to prove damages.[9]

The next letter under consideration is a September 23, 2013 letter from Shirley Moore Smeal, an Executive Deputy Secretary with the DOC, to Mr. Hill, who was then an inmate at SCI Fayette. (Plaintiff's Proposed Exhibit 29). Similar to proposed exhibit 27, Mrs. Hill argues that this letter is relevant because "it confirms the position of the Pennsylvania Department of Corrections as to the reasons for Plaintiff's indefinite suspension… Furthermore, [it] evidences Defendants' ongoing

---

[9] Should Mrs. Hill seek to introduce proposed exhibits 28 and 36 to prove damages, a limiting instruction will be given to the jury.

retaliatory and harassing conduct towards the Plaintiff." Once more, however, the DOC's position as to the reasons for Mrs. Hill's suspension are not relevant, as the DOC is not a party to this litigation. The comments and opinions of the other DOC officials simply cannot be imputed to the named Defendants, who have been sued in their individual capacity. While Defendant Glunt is copied on this letter, the contents offer no insight into his state of mind or other evidence which shows a retaliatory intent on his part at the time the decision was made to suspend Mrs. Hill. Moreover, once again, to the extent that Mrs. Hill intends to introduce this letter for the truth of its contents (i.e. that the reasons for her suspension are the reasons given in the letter), it is hearsay. Fed. R. Evid. 801(c). Accordingly, Plaintiff's proposed exhibit 29 is not admissible.

Finally, Mrs. Hill seeks to introduce a ten-page letter that she sent to John Wetzel, the Secretary of the DOC, on November 19, 2013. (Plaintiff's Proposed Exhibit 41). Mrs. Hill did not copy any of the named Defendants on this letter, and her letter is filled with hearsay, irrelevant information, and her own opinion of the events surrounding her suspension. (*Id.*). In addition, the letter itself is hearsay under Federal Rule of Evidence 801(c) to the extent that Mrs. Hill seeks to use the truth of her own prior statements "to rebut the purported reasons for Plaintiff's indefinite suspension." (Docket No. 189, at 13). In this Court's estimation, this letter has no probative value as to the Defendants' state of mind in suspending Mrs. Hill and should be excluded.

Ultimately, each of the five letters which are the subject of Defendants' Motion in *Limine* (Second) are inadmissible to prove Defendants' liability, for the reasons given. However, Plaintiff's proposed exhibits 28 and 36 may be used as evidence of Mrs. Hill's damages, as they demonstrate the efforts she undertook to have her visitation rights reinstated. Accordingly, Defendants' Motion in *Limine* (Second) is granted in part, and denied in part.

## IV. CONCLUSION

For all of the foregoing reasons, Defendants' Motion in *Limine* (First) is GRANTED in its entirety. Defendants' Motion in *Limine* (Second) is GRANTED in part, to the extent that none of the documents in question may be admitted to prove Defendants' liability, and DENIED in part, to the extent that proposed exhibits 28 and 36 may be used solely for the purpose of proving Mrs. Hill's damages.

*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated: August 2, 2021
cc/ecf:  All counsel of record